PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

CHRISTOPHER DEVON CRUDUP,
          *Defendant-Appellant.*

⎱
⎰  No. 05-4048

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Senior District Judge.
(CR-95-181-5-1-F)

Argued: May 26, 2006

Decided: August 7, 2006

Before WILKINS, Chief Judge, SHEDD, Circuit Judge,
and HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Judge Shedd wrote the opinion, in which Chief Judge Wilkins and Senior Judge Hamilton joined.

## COUNSEL

**ARGUED:** Jane Ely Pearce, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Christine Witcover Dean, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Stephen C. Gordon, Assistant Federal Public Defender, OFFICE OF

THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Frank D. Whitney, United States Attorney, Anne M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

**OPINION**

SHEDD, Circuit Judge:

Christopher Crudup appeals his 36-month term of imprisonment imposed after the district court revoked his supervised release. Crudup claims that the length of his revocation sentence is unreasonable.[1] We affirm.

I.

In 1996, Crudup pleaded guilty to armed bank robbery and was sentenced to 63 months' imprisonment to be followed by 36 months of supervised release. The district court imposed several conditions on Crudup's supervised release, including that he must not engage in any criminal conduct, he must submit to drug-screen urinalysis, and he must work regularly at a lawful occupation. After serving his term of imprisonment, Crudup was released from federal prison in 2000 and began his 36-month term of supervised release.

In July 2002, Crudup was arrested on various state charges, including assaulting a police officer with a deadly weapon and fleeing to avoid arrest. In September 2002, Crudup pleaded guilty in state court to the assault and flight charges and was sentenced to approximately two years of confinement in state prison.

The federal probation officer assigned to supervise Crudup filed a motion to revoke Crudup's supervised release based on the state offenses. During the supervised release revocation hearing, the district court determined that Crudup violated the terms of his supervised

---

[1]Crudup does not challenge the district court's decision to revoke his supervised release.

release by engaging in criminal conduct. Nevertheless, the district court concluded that "the ends of justice would best be served by denying the motion for revocation . . . and continuing supervision under the original terms and conditions imposed in this case." J.A. 15. The district court warned Crudup, however, that if he violated the conditions of his supervised release again the court would impose the maximum applicable statutory revocation sentence — 36 months' imprisonment.

Crudup was released from state custody in April 2004. Six months later, on October 5, 2004, Crudup tested positive for using marijuana. Rather than revoke Crudup's supervised release based on this violation of the conditions of his release, the district court gave Crudup "one last chance" and placed him in a more comprehensive drug-detection urinalysis program. J.A. 21. Crudup failed to submit to required drug tests on seven occasions in October and November. When Crudup finally submitted to a drug test on November 22, he tested positive for marijuana and cocaine.

The federal probation officer again moved to revoke Crudup's supervised release based on his violation of three conditions: (1) failing to take required drug tests; (2) using illicit drugs; and (3) quitting his job. The revocation worksheet completed by the probation officer noted that all three grounds were Grade C violations. The worksheet also calculated the applicable advisory sentencing range to be 5 to 11 months' imprisonment based on the policy statements in Chapter 7 of the United States Sentencing Commission *Guidelines Manual*.

At the revocation hearing, Crudup did not dispute the factual allegations of the motion for revocation. Crudup also admitted his drug problem and requested drug treatment. The district court concluded that Crudup violated the conditions of his supervised release by using illicit drugs, by refusing to submit to drug tests, and by failing to work regularly at a lawful occupation. After noting that the recommended Chapter 7 range was 5 to 11 months, the district court sentenced Crudup to 36 months' imprisonment based on his numerous violations of the conditions of his supervised release and the district court's previous warning to Crudup that he would get the maximum statutory revocation sentence if he continued to violate his release

conditions. The district court also recommended that Crudup receive intensive drug treatment while incarcerated.

## II.

Crudup's only argument is that the district court's variance from the 5 to 11-month advisory sentencing range to the 36-month statutory maximum sentence is unreasonable. Crudup asserts that the advisory range of 5 to 11 months is presumptively reasonable and would have punished him adequately.

The United States Supreme Court's recent opinion in *United States v. Booker*, 543 U.S. 220 (2005), has engendered comment among several circuit courts as to what is the proper standard under which circuit courts should review supervised release revocation sentences.[2] Before addressing the particular facts and circumstances underlying Crudup's revocation sentence, we first determine the proper standard for our review.

## A.

Chapter 7 of the *Guidelines Manual* deals with violations of supervised release and probation. Rather than issue guidelines to govern sentences for these violations, the United States Sentencing Commission chose instead "to promulgate policy statements only" to give courts "greater flexibility" in devising revocation sentences. Ch.7, pt.A, introductory cmts. 1, 3(a).

Congress has provided in 18 U.S.C. § 3742(a)(4) that a defendant convicted of an "offense for which there is no sentencing guideline" may appeal his sentence on the ground that it is "plainly unreasonable." In *Booker*, the Supreme Court recognized that defendants who receive supervised release revocation sentences are authorized to

---

[2]*See United States v. Lewis*, 424 F.3d 239 (2nd Cir. 2005); *United States v. Kirby*, 418 F.3d 621 (6th Cir. 2005); *United States v. Cotton*, 399 F.3d 913 (8th Cir. 2005); *United States v. Miqbel*, 444 F.3d 1173 (9th Cir. 2006); *United States v. Tedford*, 405 F.3d 1159 (10th Cir. 2005); *United States v. Sweeting*, 437 F.3d 1105 (11th Cir. 2006).

appeal under § 3742(a)(4) because these "sentences [are] imposed where there [i]s no applicable Guideline." 543 U.S. at 262.

Congress also "set[ ] forth standards of review" for sentencing appeals at 18 U.S.C. § 3742(e). *Booker*, 543 U.S. at 259. Section 3742(e)(4) applies to supervised release revocation sentences because it governs sentences "imposed for an offense for which there is no applicable sentencing guideline." *Id.* This particular standard of review requires the courts of appeals to "determine whether the [supervised release revocation] sentence . . . is plainly unreasonable." *Id.*

To remedy what it deemed to be a constitutional defect in the guidelines, the Supreme Court in *Booker* excised § 3553(b)(1) and the standard of review provisions of § 3742(e), thereby effectively rendering the guideline system advisory. *United States v. Moreland*, 437 F.3d 424, 431-32 (4th Cir. 2006). Thus, it appears that the "plainly unreasonable" standard of review at § 3742(e)(4) governing supervised release revocation sentences is no longer valid.[3]

---

[3]It is arguable that *Booker* did not affect § 3742(e)(4) at least as it applies to supervised release revocation sentences. The part of the *Booker* majority opinion holding that the guidelines violated the Sixth Amendment noted that "[i]f the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment." 543 U.S. at 233. Before *Booker*, we, along with the nine other circuits that addressed the issue, held that the Chapter 7 supervised release policy statements were "not binding on the courts" and only "provide helpful assistance to courts in sentencing, but are not mandatory." *United States v. Davis*, 53 F.3d 638, 640-41 n.9 (4th Cir. 1995) (cataloguing the circuit courts holding that the Chapter 7 policy statements are not binding in supervised release revocation sentences). Although the Supreme Court had ruled pre-*Booker* that some policy statements and commentary were binding on courts, *see Stinson v. United States*, 508 U.S. 36, 38 (1993) (stating that commentary that interprets or explains a guideline is authoritative); *Williams v. United States*, 503 U.S. 193, 201 (1992) (holding that if a "policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable Guideline"), it had not addressed whether the Chapter 7 policy

Having excised the standards of review statutory provision applicable to sentencing, the Supreme Court proceeded to "infer appropriate review standards from related statutory language, the structure of the statute," and other practical considerations. *Booker*, 543 U.S. at 260-61. Based on these considerations, the Supreme Court inferred a new standard of review for sentencing appeals: "[A]ppellate courts [must] determine whether the sentence 'is unreasonable' with regard to [the factors in] § 3553(a)." *Id.* at 261.[4]

Because *Booker* reviewed an original guideline sentence imposed after conviction and not a supervised release revocation sentence, the question remains whether *Booker*'s unreasonableness standard applies to revocation sentences.[5] Based on our review of the structure of

---

statements were mandatory and binding. Because the Supreme Court has not decided this issue, we cannot state with certainty that the post-*Booker* Supreme Court would deem § 3742(e)(4) to still be valid as applied to supervised release revocation sentences. Thus, we are bound by the Supreme Court's broad ruling excising § 3742(e) in its entirety.

[4]Consistent with the mandate of *Booker*, we now follow the unreasonableness standard in our review of original sentences. *See United States v. Hughes*, 401 F.3d 540 (4th Cir. 2005); *United States v. Green*, 436 F.3d 449 (4th Cir. 2006); *Moreland*, 437 F.3d at 432. We have not, however, specifically addressed the proper standard of review for supervised release revocation sentences in a post-*Booker* published opinion.

[5]We do not interpret *Booker* as ruling that supervised release sentences must be reviewed under the unreasonableness standard instead of the plainly unreasonable standard. In stating that its new unreasonableness standard was a practical replacement for the mandatory guidelines, the Supreme Court in *Booker* noted that appellate courts were already familiar with the unreasonableness standard because they had experience applying it in several contexts, including in reviewing supervised release and probation revocation sentences. 543 U.S. at 262. The Supreme Court cited several illustrative cases, including *United States v. White Face*, 383 F.3d 733, 737 (8th Cir. 2004), *United States v. Salinas*, 365 F.3d 582, 588 (7th Cir. 2004), and *United States v. Olabanji*, 268 F.3d 636, 637 (9th Cir. 2001). In these three cases, the circuit courts reviewed the revocation sentences under the "plainly unreasonable" standard of review. It would be odd to suggest that the Supreme Court intended to replace the "plainly unreasonable" standard when it cited cases which used that very standard.

§ 3742 and other related statutory and guideline provisions, we hold that revocation sentences should be reviewed to determine whether they are "plainly unreasonable" with regard to those § 3553(a) factors applicable to supervised release revocation sentences.[6]

We first note that the structure of § 3742 suggests that "plainly unreasonable" is the proper standard of review for revocation sentences. Under § 3742(a)(4) — a provision not invalidated by *Booker* — a defendant sentenced for violating supervised release is authorized to appeal only on the ground that his sentence is "plainly unreasonable." We infer from this provision that revocation sentences should be reviewed under this same standard. It would seem incongruous that a defendant limited to asserting that his revocation sentence is "plainly unreasonable," would be allowed to argue that his sentence should be reversed because it is "unreasonable."

Related guideline commentary and statutory provisions also suggest that revocation sentences should not be treated exactly the same as original sentences. For instance, while the guidelines base original sentences primarily on the severity of the defendant's criminal conduct and criminal history, the commentary to the policy statements in Chapter 7 make clear that district courts should focus on the defendant's "failure to follow the court-imposed conditions of . . . supervised release as a 'breach of trust'" when imposing revocation

---

[6]The circuit courts that have considered this issue post-*Booker* either decline to decide whether plainly unreasonable or unreasonableness is the proper standard, use *Booker*'s unreasonableness standard, or state that unreasonableness is the same as, or similar to, the plainly unreasonable standard. *See Miqbel*, 444 F.3d at 1176 n. 5 (ruling that *Booker*'s unreasonableness standard displaces plainly unreasonable standard); *Sweeting*, 437 F.3d at 1106 (deciding that unreasonableness essentially the same as plainly unreasonable standard); *Lewis*, 424 F.3d at 243 (adopting *Booker*'s reasonableness standard); *Kirby*, 418 F.3d at 625-26 n.3 (declining to decide if plainly unreasonable or *Booker*'s unreasonableness standard is proper standard because sentence affirmable under either standard); *Tedford*, 405 F.3d at 1161 (ruling that reasonableness has always been the proper standard and remains so after *Booker*); *Cotton*, 399 F.3d at 916 (deciding that the Supreme Court's citation to *White Face* in *Booker* indicates that unreasonableness is the same standard as plainly unreasonable).

sentences. *Guidelines Manual*, ch. 7, pt. A, introductory cmt. 3(b). "[I]mposition of an appropriate punishment for any new criminal conduct [is] not . . . the primary goal of a revocation sentence. Instead, the sentence imposed upon revocation [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision." *Id.* In addition, rather than promulgate "a detailed revocation guideline system similar to that applied at the initial sentencing," the Sentencing Commission opted instead to classify all revocation conduct into "three broad grades of violations." *Id.* The fact that the Sentencing Commission chose to promulgate less precise, nonbinding policy statements and to focus punishment on violations of a court order rather than on the particular conduct giving rise to the revocation, clearly suggests that the Sentencing Commission intended to give district courts substantial latitude in devising revocation sentences for those defendants who violate a district court's orders governing their conduct during supervised release.

Moreover, in enacting 18 U.S.C. § 3583 — the criminal statute governing supervised release violations and sentences — Congress expressly provided that some of the sentencing factors listed in § 3553(a) applicable to original sentences are not applicable to revocation sentences. *See* § 3583(e).[7] Furthermore, unlike original sentences that have a guideline range and a separate statutory maximum, the statutory maximum sentence for supervised release revocation sentences is directly tied to the original term of supervisory release. Section 3583(e)(3) specifically authorizes the district court to "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release" imposed at the time of the original sentencing.

In addition, unlike the two circuit courts that have decided that there is no difference between unreasonableness and the plainly unreasonable standard, *see Sweeting*, 437 F.3d at 1106; *Cotton*, 399 F.3d at 916, we conclude that Congress intended a distinction between the two terms. Congress used both terms — "unreasonable" and "plainly unreasonable" — in § 3742(e), the standard of review section that *Booker* excised. Section 3742(e)(3) provided that the

---

[7]The *Booker* Court specifically noted that § 3583 was not affected by its decision and remains "perfectly valid." 543 U.S. at 258.

court of appeals should review a sentencing departure from a mandatory guideline range to determine if it is "unreasonable." In contrast, § 3742(e)(4) provided that the court of appeals should review sentences for offenses for which there is no applicable mandatory guideline range to determine if it is "plainly unreasonable." Because there is no indication that Congress intended the word "plainly" to be surplusage, the best interpretation of these two terms in their context is that they are not coterminous. Congress clearly intended the word "plainly" to modify "unreasonable" in some way. *See Chickasaw Nation v. United States*, 534 U.S. 84, 85 (2001) (recognizing the canon of statutory interpretation requiring a court to give effect to every word of statute unless giving effect would be repugnant to remainder of statute); *United States v. Williams*, 364 F.3d 556, 559 (4th Cir. 2004).

In determining whether a sentence is plainly unreasonable, we first decide whether the sentence is unreasonable. In conducting this review, we follow generally the procedural and substantive considerations that we employ in our review of original sentences, as outlined in our recent opinion in *Moreland*, 437 F.3d at 434, with some necessary modifications to take into account the unique nature of supervised release revocation sentences. For instance, as mandated by § 3583(e), not all the original sentencing factors of § 3553(a) can be considered when reviewing a revocation sentence. According to § 3583(e), in devising a revocation sentence the district court is not authorized to consider whether the revocation sentence "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense," § 3553(a)(2)(A), or whether there are other "kinds of sentences available," § 3553(a)(3).

In addition, we also recognize that determining whether a revocation sentence is unreasonable "entails a deferential appellate posture concerning issues of fact and the exercise of discretion." *See Salinas*, 365 F.3d at 588 (quoting *United States v. Marvin*, 135 F.3d 1129, 1136 (7th Cir. 1998)). Although a district court must consider the "helpful assistance" contained in the Chapter 7 policy statements, *Davis*, 53 F.3d at 640, along with the statutory requirements of § 3583 and the § 3553(a) factors applicable to revocation sentences, "the court ultimately has 'broad discretion to revoke its previous sentence and impose a term of imprisonment' up to the statutory maximum,"

*Lewis*, 424 F.3d at 244 (quoting *United States v. Pelensky*, 129 F.3d 63, 69 (2d Cir. 1997)).[8] Moreover, we agree with the Second Circuit that "a court's statement of its reasons for going beyond non-binding *policy statements* in imposing a sentence after revoking a defendant's supervised release term need not be as specific as has been required when courts departed from *guidelines* that were, before *Booker*, considered to be mandatory." *Lewis*, 424 F.3d at 245.[9]

If we determine based on this review that a revocation sentence is not unreasonable, the sentence should be affirmed. In such a circumstance, we do not proceed to the second prong of our review because it necessarily follows that a sentence that is not unreasonable is also not plainly unreasonable. However, if we determine that the revocation sentence is procedurally or substantively unreasonable, we must then decide whether the sentence is *plainly* unreasonable, relying on the definition of "plain" that we use in our "plain" error analysis. Thus, for purposes of determining whether an unreasonable sentence is plainly unreasonable,"'[p]lain' is synonymous with 'clear' or, equivalently, 'obvious.'" *See Hughes*, 401 F.3d at 547 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

## B.

Having defined the proper standard of review, we now decide

---

[8]It makes sense that district courts are given broader latitude to impose statutory maximum revocation sentences. The risk of a district court imposing an overly aggressive term of imprisonment is greatly reduced in the revocation sentence context. No matter how serious the revocation conduct and how extensive the defendant's criminal history, the longest possible revocation sentence a district court can impose is five years. *See* 18 U.S.C. § 3583(b)(1),(e)(3).

[9]It would be an odd result if *Booker* were interpreted to reduce the level of discretion district courts have always had to devise revocation sentences under policy statements that have uniformly been deemed non-binding while giving district courts more discretion to impose original sentences under guidelines that were deemed binding until *Booker*. Such a reading of *Booker* would place the loose, flexible grid system envisioned by the Sentencing Commission for revocation sentences on the same level as the precise guideline system devised for original sentences.

whether Crudup's 36-month revocation sentence is within the applicable statutory range, *see Hughes*, 401 F.3d at 546-47, and is not plainly unreasonable. Because we decide that Crudup's sentence is within the prescribed statutory range and is not plainly unreasonable, we affirm.

First, Crudup's 36-month revocation sentence is within the applicable statutory range. When Crudup was originally sentenced in 1996, the district court imposed a 36-month term of supervised release to commence after Crudup completed his term of imprisonment. After being released from prison, Crudup was subject, pursuant to § 3583(e)(3), to a maximum 36-month term of imprisonment if the district court were to find by a preponderance of the evidence that he violated any of the conditions of his supervised release. *See id.* (authorizing the district court to "revoke a term of supervised release, and require the defendant to serve in prison *all* or part of the term of supervised release authorized by statute for the offense that resulted" in his original sentence) (emphasis added).

Second, Crudup's revocation sentence is neither procedurally nor substantively unreasonable. Procedurally, the district court expressly considered the Chapter 7 advisory policy statement range of 5 to 11 months' imprisonment,[10] and Crudup does not argue that the district court failed to consider any pertinent § 3553(a) sentencing factors.

Substantively, the district court sufficiently stated a proper basis for its conclusion that Crudup should be sentenced to the maximum statutory sentence. The district court noted in particular Crudup's admitted pattern of violating numerous conditions of his supervised release — any one of which would have subjected Crudup to the same advisory 5 to 11 month range — despite the fact that the district court had repeatedly extended leniency to Crudup in an effort to encourage his compliance. The district court also noted Crudup's need for substance abuse treatment, and it recommended that Crudup receive intensive

---

[10]We note that the district court correctly did not take into account Crudup's 2002 state court convictions in calculating his criminal history for revocation purposes. Pursuant to § 7B1.4(a), the proper criminal history for revocation sentence purposes is the "criminal history applicable at the time the defendant originally was sentenced to a term of supervision."

substance abuse training while incarcerated. *See United States v. Tsosie*, 376 F.3d 1210, 1218-19 (10th Cir. 2004) (cataloguing opinions affirming the imposition of lengthy revocation sentences to allow defendants to undergo substance abuse treatment while in custody); § 3553(a)(2)(D) (authorizing the district court to consider whether the sentence would provide the defendant with needed substance abuse treatment). Based on the broad discretion that a district court has to revoke supervised release and impose a term of imprisonment up to the statutory maximum, *Lewis*, 424 F.3d at 244, we cannot say that the district court's imposition of the statutory maximum sentence against Crudup is unreasonable. Because we conclude that Crudup's sentence is not unreasonable, it necessarily follows that his sentence is not plainly unreasonable.

### III.

For the foregoing reasons, we conclude that Crudup's 36-month revocation sentence is not plainly unreasonable, and we affirm the judgment of the district court.

*AFFIRMED*