<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-4144

UNITED STATES OF AMERICA,

             Plaintiff – Appellee,

      v.

JOSHUA PAUL CAUDILL, a/k/a Josh Caudill,

             Defendant – Appellant.

Appeal from the United States District Court for the Southern
District of West Virginia, at Charleston.  John T. Copenhaver,
Jr., District Judge.  (2:05-cr-00135-JTC-1)

Argued:  March 23, 2012                 Decided:  May 2, 2012

Before DAVIS and DIAZ, Circuit Judges, and Jackson L. KISER,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion,
in which Judge Davis and Senior Judge Kiser joined.

**ARGUED:** Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Charleston, West Virginia, for Appellant.  Philip
Henry Wright, OFFICE OF THE UNITED STATES ATTORNEY, Charleston,
West Virginia, for Appellee.  **ON BRIEF:** Mary Lou Newberger,
Federal Public Defender, David R. Bungard, Assistant Federal
Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Charleston, West Virginia, for Appellant.  R. Booth Goodwin II,
United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

After serving a federal prison sentence following his conviction for a drug offense, Joshua Paul Caudill committed numerous violations of the terms of his supervised release. Consequently, the district court revoked Caudill's supervised release and imposed a sentence of twenty-one months in prison, followed by a period of thirty-nine months of supervised release. Caudill, who did not object before the district court, now contends that the sentence was plainly unreasonable because the court impermissibly focused on the seriousness of the offense leading to revocation. Reviewing for plain error, we affirm.

I.

Caudill pled guilty to possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1), before the U.S. District Court for the Southern District of West Virginia. The court sentenced Caudill to sixty months in prison, followed by four years of supervised release. In addition to the standard conditions of supervision--including requirements to not commit any other federal or state crime, refrain from the excessive use of alcohol or drugs, and notify probation within seventy-two hours of any arrest--the court imposed a special

3

condition, requiring Caudill to participate in an in-patient substance abuse program.

Caudill began violating the terms of his release almost immediately. Within six months of the start of his supervision, Caudill's probation officer filed a Petition for Warrant or Summons for Offender Under Supervision, recommending revocation of Caudill's supervised release. The petition listed five suspected violations, including four positive drug tests for marijuana, a state conviction for driving under the influence, failure to refrain from the excessive use of alcohol, failure to provide timely notice of an arrest, and discharge from the community confinement center for fighting.

The district court held a revocation hearing at which Caudill admitted the violations contained in the petition. Caudill requested, however, that the district court hold his revocation in abeyance and modify the conditions of release to require an additional six months of community confinement. Caudill acknowledged that if he again violated the terms of his release or was discharged from the community confinement center, "the court is likely to impose a very significant term of imprisonment on him." J.A. 33.

In response, the court stated that it had anticipated imposing a prison sentence of six to twelve months based on the violations and the range of imprisonment prescribed by the U.S.

4

Sentencing Guidelines. The court noted that it was "disturbed" that the violations occurred so soon following Caudill's release and was "dubious about whether or not [Caudill] really [had] any desire to conform [his] conduct to the requirements of society" or the community confinement center. Id. 34. The court nevertheless agreed with Caudill's request, holding the revocation in abeyance and ordering six additional months of community confinement. The court warned Caudill, however, that "this is the last chance you have." Id. 35.

Within six months of the hearing, Caudill's probation officer submitted a second petition recommending revocation of Caudill's supervised release. The petition restated the prior violations and added that Caudill had been discharged from the community confinement center for multiple rules violations. In an amendment to the petition, the probation officer described an additional violation, alleging that Caudill participated in a transaction involving drugs and a stolen firearm.

At a second revocation hearing, Caudill admitted to the rules violations at the community confinement center--including failure to complete release forms and possession of contraband in the form of a cell phone, rolling papers, and a lighter--but contested the merits of the decision to discharge him. Caudill also challenged the violation related to the drug and gun offense. The government presented evidence to support the

violations, including testimony from several witnesses involved in the drug and firearm transaction and subsequent investigation. The evidence showed that Caudill sold a stolen firearm on behalf of an associate in exchange for $400 worth of OxyContin pills. Caudill also provided drugs to facilitate a drug deal between the same individual and customers, who turned out to include a confidential informant and an undercover police officer.

The district court found by a preponderance of the evidence that Caudill had committed the additional supervised release violations. The court concluded that Caudill's distribution of OxyContin pills, a Grade A violation, was the most serious offense and calculated an advisory range of imprisonment of fifteen to twenty-one months. Neither Caudill nor the government objected to the court's factual findings, and both sides agreed with the guidelines calculation. Caudill then argued for a sentence within the guidelines range. In an effort to persuade the court to allow him to self-report, Caudill described several mitigating factors, including his compliance with bond requirements, recent work history, and the birth of his son.

The court sentenced Caudill to twenty-one months in prison, a sentence at the high end of the guidelines range, followed by

6

a period of thirty-nine months of supervised release. When announcing its sentence, the court began as follows:

> [I]n view of the seriousness of the charges in this matter, not only those that the court earlier found, but these more recent ones that have been more grave indeed than those that the court had originally found, it seems to me that it is appropriate to sentence you substantially, and although I believe that a sentence within the suggested range under the advisory guidelines is appropriate, I also believe it ought to be at the top of that range.

Id. 213. The court also took into account "the need to protect the public from continuing criminal conduct" and "to deter others from engaging in like conduct." Id. The court then remanded Caudill into custody to begin serving his sentence immediately. Caudill did not object to the sentence but now appeals, contending that the sentence was plainly unreasonable because the district court improperly focused on the seriousness of his revocation violation when imposing the sentence.

II.

A.

We review a sentence imposed following the revocation of supervised release to determine if it is "plainly unreasonable." United States v. Crudup, 461 F.3d 433, 437 (4th Cir. 2006).[*] "In

---

[*] Recognizing that one panel of this court may not overrule another, Caudill nevertheless asks us to reconsider the plainly unreasonable standard adopted in Crudup. We decline Caudill's
(Continued)

7

determining whether a sentence is plainly unreasonable, we first decide whether the sentence is unreasonable," applying the same procedural and substantive considerations that we employ in reviewing an initial sentence. Id. at 438. If the revocation sentence is either procedurally or substantively unreasonable, "we must then decide whether the sentence is plainly unreasonable, relying on the definition of 'plain' that we use in our 'plain' error analysis." Id. at 439.

Because Caudill did not object or argue for a different sentence from the one imposed, he must satisfy the additional requirements of plain error review. See United States v. Lynn, 592 F.3d 572, 578 (4th Cir. 2010) (ruling that to preserve a sentencing error, a defendant need only have argued for a sentence different than the one imposed). To satisfy plain error, Caudill must show not only that an error was made and that the error was plain--requirements he must already meet under Crudup--but also that the error affected his substantial rights. Id. at 580. Even if Caudill satisfies these requirements, we retain discretion and will correct the error

---

invitation and instead apply the binding law of the circuit. See United States v. Collins, 415 F.3d 304, 311 (4th Cir. 2005) ("A decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." (citation omitted)).

only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Massenburg, 564 F.3d 337, 343 (4th Cir. 2009) (citation omitted). Caudill is unable to satisfy any of these requirements.

B.

A district court has "broad discretion to revoke its previous sentence and impose a term of imprisonment up to the statutory maximum." Crudup, 461 F.3d at 439 (citation and internal quotation marks omitted). When selecting a revocation sentence, the court must consider all relevant guidelines policy statements, as well the statutory requirements outlined in 18 U.S.C. § 3583. Id. Section 3583 directs courts to consider nearly all of the same factors it considers during an initial sentencing. See 18 U.S.C. § 3583(e) (listing the factors from § 3553(a) that a court should consider during revocation sentencing). Omitted from this list, however, is "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Id. § 3553(a)(2)(A).

Omission of the seriousness of the offense from the list of factors courts must consider during revocation sentencing reflects the U.S. Sentencing Commission's view that "at

9

revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S. Sentencing Guidelines Manual ch. 7, pt. A, introductory cmt. 3(b). Instead, "the court with jurisdiction over the criminal conduct leading to revocation is the more appropriate body to impose punishment for that new criminal conduct." Id. Accordingly, during revocation sentencing, courts should not seek to punish the defendant for the offense leading to revocation but should instead impose a sentence that appropriately sanctions him for his "breach of trust." See id. In this case, however, Caudill is unable to show that the district court's reference to the seriousness of the offense leading to revocation constituted error--plain or otherwise--or rendered his sentence plainly unreasonable.

While not listed as a factor that courts should specifically consider during revocation sentencing, the seriousness of the offense is related to several of the permissible factors. For example, courts must consider the history and characteristics of the defendant, the need to afford adequate deterrence to criminal conduct, and the need to protect the public from further crimes of the defendant. 18 U.S.C. § 3583(e) (listing § 3553(a)(1), (a)(2)(B), and (a)(2)(C) as appropriate factors for consideration during revocation

10

sentencing).  The seriousness of the offense leading to revocation is closely intertwined with a defendant's history and characteristics and is relevant to his propensity for recidivism and ability to integrate into the community.  Accordingly, a court may properly consider the seriousness of the conduct giving rise to the revocation in connection with the other statutory factors.

Here, the district court did not err by considering the seriousness of the offense leading to revocation when sentencing Caudill.  Caudill's recent drug and firearm offense was a relevant part of his history and characteristics, which included past drug use and a drug-related conviction.  Furthermore, the court expressly referenced the need to protect the public and deter others when it announced Caudill's sentence.  In the first hearing, the court also noted that it was disturbed that Caudill had violated his conditions of release so soon after serving his sentence and questioned whether he would be able to follow the rules in the future.  Based on this record, we conclude that the district court's within-guidelines sentence was a proper sanction for Caudill's breach of trust and was not plainly unreasonable.  In the context of the two sentencing hearings, the court's reference to the seriousness of the offense did not violate § 3583(e) and did not constitute error--plain or otherwise.

11

Even if the district court did commit plain error--which it did not--Caudill is nevertheless unable to satisfy the remaining requirements of plain error review. In order to show that the error affected his substantial rights, Caudill must show that the district court's consideration of the conduct leading to revocation "had a prejudicial effect on the sentence imposed." Lynn, 592 F.3d at 580. After the first revocation hearing, Caudill knew that he faced "a very significant term of imprisonment" if he violated the terms of his release. J.A. 33. Accordingly, in the second hearing, he did not argue for a below-guidelines sentence but instead "ask[ed] the court to consider imposing a sentence within the guideline[s] range." Id. 210. To the extent Caudill offered any mitigating factors, his purpose was to convince the court to allow him to self-report. Because Caudill argued for the sentence ultimately imposed, he cannot show that any error affected his substantial rights. See Lynn, 592 F.3d at 580.

Finally, this is not a case in which our failure to correct an error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. Caudill repeatedly violated the conditions of his supervised release, beginning within a month of his release from prison. He failed numerous drug tests, was convicted of driving under the influence, and was twice discharged from the community confinement center for

12

failure to comply with its rules. The district court had already given Caudill a second chance when he again violated the terms of his release by engaging in serious criminal conduct involving stolen guns and drugs. On this record, we decline to exercise our discretion to grant relief for plain error.

III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

13