[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11710
Non-Argument Calendar
_____

D.C. Docket No. 1:02-cr-00045-ODE-LTW-18

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEATON LAMAR JOHNSON,
a.k.a. White Boy Keith,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 19, 2013)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Keaton Johnson appeals his sentence of 36 months' imprisonment and one year of supervised release imposed upon revocation of his supervised release. Johnson argues that his sentence is procedurally and substantively unreasonable. After review, we affirm.

## I. BACKGROUND

This is not Johnson's first revocation of supervised release. We review his earlier revocation and then this one.

### A.    First Petition for Revocation of Supervised Release

In 2002, Johnson pled guilty to conspiring to distribute cocaine and money laundering. The district court imposed concurrent 87-month sentences, followed by five years of supervised release. Later, Johnson's prison term was reduced to 70 months, pursuant to Federal Rule of Criminal Procedure 35(b). On March 30, 2007, Johnson completed his prison term and began supervised release in the Northern District of Georgia.

Less than four months later, on July 19, 2007, Johnson's probation officer petitioned the district court for a warrant for his arrest and to revoke supervised release. The petition alleged that Johnson: (1) was charged with new criminal conduct, driving on a suspended license, in Tennessee; (2) had failed to answer the probation officer's questions truthfully concerning his reasons for leaving the district; and (3) had traveled outside the district without the probation officer's

2

permission.  The petition alleged that Johnson had told the probation officer that he left the district for Tennessee due to an emergency concerning his daughter but that the official police reports indicated Johnson told the arresting officers in Tennessee that he was returning from Buffalo, New York.

## B.    First Revocation Hearing

At a revocation hearing, Johnson admitted the allegations.  Johnson and his fiancé told the district court that Johnson went to New York to sell some of her jewelry because they were having financial problems and that Johnson was returning from New York with the proceeds when he was arrested in Tennessee.  Johnson admitted asking Charmane Porter, the woman arrested with him in Tennessee, to claim that the money belonged to her because Johnson feared his probation officer would think he had returned to drug dealing.

The district court found that Johnson had violated the conditions of his supervised release.  The district court stated that Johnson's explanation for why he was outside the district "[did] not compute" and found that Johnson "in fact [was] lying still about what actually happened."  The district court further found that the advisory guidelines range of three to nine months' imprisonment was not adequate.  The district court revoked Johnson's supervised release and imposed a twelve-month sentence, followed by three years of supervised release.

## C.    Second Petition for Revocation of Supervised Release

On August 15, 2008, Johnson was released from prison and began serving his second period of supervised release. In May 2010, Johnson's probation officer again petitioned the district court for a warrant for Johnson's arrest. The petition alleged that Johnson had failed to report to the probation officer for the last two months and his whereabouts were unknown.

Johnson's whereabouts remained unknown for almost three years, until February 2013, when Johnson was arrested in Texas for presenting a fictitious driver's license to Transportation Security Administration officers at an airport. Johnson's probation officer then filed an amended petition, including this February 2013 arrest.

**D.    Second Revocation Hearing**

At his second revocation hearing, Johnson admitted the allegations in the amended petition and did not oppose revocation of supervised release. Johnson requested a sentence within the advisory guidelines range of three to nine months.

In mitigation, Johnson explained that he panicked after a traffic accident and chose to abscond rather than risk revocation. Johnson said that, at that time of his accident, his oldest son was facing an attempted murder charge, his grandson was hospitalized and later passed away, and his mother was in poor health and having financial troubles. Johnson submitted letters from his oldest son, his daughter, his

4

girlfriend, and his girlfriend's daughter, all of whom spoke generally of Johnson as a caring and supportive father.

The government asked for the maximum four-year sentence, noting that: (1) the circumstances of Johnson's Texas arrest raised suspicions that Johnson had returned to the drug trade; (2) Johnson absconded for almost three years; (3) this was Johnson's second revocation, and he had served a one-year term after his first revocation; and (4) at Johnson's original sentencing, he received an 87-month sentence, below the ten-year mandatory minimum, and then later received a reduction to 70 months based on his cooperation.

Johnson's counsel objected to the government's speculation that Johnson had re-engaged in drug activity, noting that there was no evidence of drug involvement in Texas. When the district court pointed out that there was also no evidence of any non-drug-related activity in Texas, Johnson's counsel stated that Johnson was in Texas for a bike event.

The district court sentenced Johnson to a three-year term, followed by one year of supervised release. In considering "the 3553 factors," the district court emphasized the importance of "promoting respect for the law," and that Johnson "just disregarded the court's instructions as far as supervised release goes," and "just basically decided that what he wanted to do was more important." The

5

district court further noted that the sentence was imposed as "punishment for Mr. Johnson's just skipping out on supervised release."

The district court stated it was "struck" by the letters from Johnson's family and acknowledged that his family regarded him as a good father. The court concluded, however, that Johnson had offered "no real explanation for what happened here." The district court stressed that Johnson "decided to absent himself from the court's supervision for several years." The district court acknowledged that it could not speculate about Johnson's activities in Texas, stating, "I won't do that, but it just seems to me that there ought to be more information coming in about what Mr. Johnson was doing during the period when he was absconding from supervised release." The district court credited Johnson's explanation of the family problems at the time that he absconded, but concluded that the explanation was not sufficient, stating that if Johnson had not been caught in Texas, he would "still be out on the lamb." Finally, the district court opined that Johnson's case was not a "good case for giving him a break," because he had already received a break on his original sentence, and it was Johnson's second revocation.

Johnson objected "to the substantive reasonableness of the length of the sentence" and "to the substantive reasonableness of the imposition of an additional year of supervised release." Johnson then appealed.

6

## II.  DISCUSSION

### A.    General Principles

Pursuant to 18 U.S.C. § 3583(e), a district court may revoke a term of supervised release and impose a term of imprisonment after considering certain factors set forth in 18 U.S.C. § 3553(a).  The district court also must consider the policy statements in Chapter 7 of the Sentencing Guidelines, including recommended, non-binding ranges of imprisonment.  United States v. Silva, 443 F.3d 795, 799 (11th Cir. 2006); U.S.S.G. § 7B1.4.

Here, the parties do not dispute that, with a Grade C violation and a criminal history of I, Johnson's recommended guidelines range under advisory Chapter 7 was three to nine months' imprisonment.  See U.S.S.G. § 7B1.4(a).  Because Johnson was on supervised release for a Class A felony, the statutory maximum sentence upon revocation was five years.  See 18 U.S.C. § 3583(e)(3).  However, Johnson had already served one year after his first revocation.  Thus, at Johnson's second revocation, the district court was authorized to impose up to four years of supervised release.  See United States v. Williams, 425 F.3d 987, 989 (11th Cir. 2005) (concluding that "§ 3582(e)(3)'s statutory maximums apply in the aggregate" for sentences imposed on multiple revocations of supervised release).

"We review the sentence imposed upon revocation of supervised release for reasonableness."  United States v. Velasquez Velasquez, 524 F.3d 1248, 1252

(11th Cir. 2008).  Our reasonableness review applies the deferential abuse of discretion standard.  Gall v. United States, 552 U.S. 38, 41, 46, 128 S. Ct. 586, 591, 594 (2007).  We first examine whether the district court committed any significant procedural error and then whether the sentence is substantively unreasonable in light of the § 3553(a) factors and the totality of the circumstances. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).  The party challenging the sentence has the burden to show it is unreasonable.  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

If the district court decides to impose an upward variance, "it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'"  United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (quoting Gall, 552 U.S. at 50, 128 S. Ct. at 597).  However, we will vacate such a sentence "only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir. 2009) (internal quotation marks omitted).

## B.    Procedural Reasonableness

Johnson contends his sentence is procedurally unreasonable because the district court improperly speculated that Johnson had committed additional

8

criminal conduct in Texas.[1]  A sentence is procedurally unreasonable if the district court, inter alia, selected a sentence based on clearly erroneous facts.  See Gall, 552 U.S. at 51, 128 S. Ct. at 597; see also United States v. Barrington, 648 F.3d 1178, 1197 (11th Cir. 2011) (explaining that the district court "may not speculate about the existence of a fact that would result in a higher sentence" and instead the government must prove the fact by "reliable and specific evidence" (internal quotation marks omitted)).

The record belies Johnson's claim.  In explaining the sentence, the district court explicitly stated that it would not speculate on whether Johnson was engaged in wrongdoing in Texas.  Rather, the district court merely observed that, although Johnson was requesting mitigation, he had provided "no real explanation" of his whereabouts during the nearly three years he was a fugitive.  The district court's comments reflected its frustration with Johnson's failure to explain adequately his activities over that three-year period and its unwillingness to give Johnson yet another "break" in light of that failure.

C.    **Upward Variance and Substantive Reasonableness**

Johnson argues that his 36-month sentence is "unreasonably harsh."  While Johnson's sentence is above the recommended guidelines range in Chapter 7, it

---

[1]The government contends we should review Johnson's procedural reasonableness claim only for plain error because he did not raise this procedural objection to his sentence in the district court.  We need not decide if plain error review applies because we conclude that there was no procedural error, plain or otherwise.

was 12 months below the statutory maximum.  Furthermore, the totality of the circumstances warranted the upward variance.

Johnson not only failed to report to his probation officer, he also absconded from supervised release for three years and was found only after he was arrested in Texas.  Although Johnson explained that he initially absconded because he "panicked" after his accident, he did not provide a satisfactory explanation for why he then remained a fugitive for almost three years and appeared to have no intention of turning himself in when he was caught by authorities.  Additionally, this was Johnson's second revocation, and the one-year sentence he received for his first revocation had not deterred him from violating the terms of his supervised release again.  Finally, as the district court noted, Johnson had received a significant sentence reduction of 17 months as a result of the government's Rule 35(b) motion.  See U.S.S.G. § 7B1.4, cmt. n.4 (providing that "an upward departure may be warranted" if the defendant's "original sentence was the result of a downward departure (e.g., as a reward for substantial assistance)").  Under the totality of the circumstances, we cannot say the district court abused its discretion when it imposed a 27-month upward variance.[2]

**D.    Relevant Factors in Revocations and Substantive Reasonableness**

---

[2]In addition, Johnson has not shown that the district court's decision to impose an additional year of supervised release after his three-year prison term was an abuse of discretion.

Johnson alternatively contends his sentence is substantively unreasonable because the district court considered improper factors. A revocation sentence may be substantively unreasonable if it is "based entirely" on impermissible factors. Velasquez Velasquez, 524 F.3d at 1252.

Specifically, Johnson points to the district court's comments about "promoting respect for the law" and "punishment" and argues that those factors were omitted from 18 U.S.C. § 3582(e)(3)'s list of factors to consider.

In initial sentencing, courts consider the § 3553(a) factors which are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant
    (D) to provide the defendant with needed educational or vocation training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established [under the Sentencing Guidelines or federal statute];
(5) any pertinent policy statement [of the Sentencing Commission or Congress];
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

11

Revocations of supervised release are governed by 18 U.S.C. § 3583(e). Section 3583(e) provide that a district court "may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)" revoke a term of supervised release.  18 U.S.C. § 3583(e)(3).  In other words, § 3583(e)(3) references most, but not all, of the § 3553(a) factors, and does not reference the factors in 18 U.S.C. § 3553(a)(2)(A)—"the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

Ordinarily, we review de novo whether the district court considered an impermissible factor.  Velasquez Velasquez, 524 F.3d at 1252.  Because Johnson did not object to his sentence on this ground in the district court, however, we review this claim only for plain error.  United States v. Castro, 455 F.3d 1249, 1251 (11th Cir. 2006).  Here, Johnson has not shown plain error.

First, even assuming arguendo that the district court considered the factors in § 3553(a)(2)(A), it is not "plain" that those factors are impermissible in the revocation context.  Section 3583(e)(2) contains a list of factors district courts are obligated to consider but that list does not purport to be exhaustive and does not identify any impermissible factors.  Thus, § 3582(e)(3) does not explicitly prohibit consideration of the factors in § 3553(a)(2)(A).

12

Neither this Court nor the Supreme Court has addressed whether it is error to consider a factor listed in § 3553(a)(2)(A) in imposing a sentence after revoking supervised release. Other circuits that have addressed this issue do not agree. The First, Second, Third, and Sixth Circuits have concluded that it is not error, while the Fourth, Fifth, and Ninth Circuits concluded that it is error. Compare United States v. Vargas-Davila, 649 F.3d 129, 131-32 (1st Cir. 2011); United States v. Young, 634 F.3d 233, 238-39 (3d Cir. 2011); United States v. Lewis, 498 F.3d 393, 399-400 (6th Cir. 2007); United States v. Williams, 443 F.3d 35, 47-48 (2d Cir. 2006); with United States v. Miller, 634 F.3d 841, 844 (5th Cir. 2011); United States v. Crudup, 461 F.3d 433, 438-39 (4th Cir. 2006); United States v. Miqbel, 444 F.3d 1173, 1181-83 (9th Cir. 2006). Under such circumstances, any alleged error cannot be "plain." See United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (explaining that an error cannot be plain "[w]hen neither the Supreme Court nor this Court has resolved an issue, and other circuits are split on it").

Second, even assuming it was error to consider the factors in § 3553(a)(2)(A) in the revocation context, a review of the district court's comments as a whole convinces us that the district court did not do so here. Subsection (a)(2)(A) is concerned with the seriousness of the defendant's offense and the need to promote respect for the criminal law the defendant violated and to provide just punishment for the defendant offense. Sentences imposed upon

13

revocation, on the other hand, are not directed toward "any new criminal conduct" committed by the defendant. U.S.S.G. Ch. 7, Pt. A, intro. cmt. 3(b). Instead, revocation sentences are imposed primarily as a sanction for the defendant's breach of trust. Id. (explaining that "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator").

Here, the district court, after stating that "promoting respect for the law" was important, pointed out that Johnson had "disregarded the court's instructions as far as supervised release goes" and instead "decided that what he wanted to do was more important." The district court then stated that Johnson's sentence was "punishment" for "just skipping out on supervised release." In other words, the district court's concern was for Johnson's flagrant disregard of the court-ordered terms of his supervised release and not for Johnson's possible violation of any criminal statutes. The district court appropriately considered Johnson's breach of trust and "to a limited degree" the seriousness of Johnson's violations. See U.S.S.G. Ch. 7, Pt. A, intro. cmt. 3(b). Significantly, the district court's stated concerns were equally relevant to other, explicitly permissible factors under § 3583(e)(3), such as the nature and circumstances of Johnson's violations (i.e., his blatant disregard of the court-ordered terms of supervised release) and the need to

afford deterrence of further such blatant violations (either by Johnson or others). For these reasons, we are convinced the district court did not in fact consider either "promot[ing] respect for the law" or "provid[ing] just punishment for the offense" as those phrases are used in § 3553(a)(2)(A).

For all these reasons, Johnson has not carried his burden to show that his 36-month sentence is substantively unreasonable.

**AFFIRMED.**

15