*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
KISOR, GANNON, and FLINTOFT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Makhi BROCKENBOROUGH**
Private First Class (E-2), U.S. Marine Corps
*Appellant*

**No. 202400476**

_____

Decided: 21 January 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Aran T. Walsh

Sentence adjudged 28 August 2024 by a general court-martial tried at Marine Corps Base, Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 30 months, and a bad-conduct discharge.[1]

For Appellant:
*Lieutenant Colonel Gregory P. Adams, USMCR*

---

[1] Appellant was credited with 125 days of pretrial confinement credit.

For Appellee:
*Lieutenant Michael G. Osborn, JAGC, USN*
*Commander John T. Cole, JAGC, USN*

Judge FLINTOFT delivered the opinion of the Court, in which Senior
Judge KISOR and Judge GANNON joined.

--------

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

--------

FLINTOFT, Judge:

A general court-martial composed of a military judge alone convicted Appellant, consistent with his pleas, of one specification of attempted sexual abuse of a child involving indecent communication, one specification of attempted extramarital sexual conduct, and one specification of fleeing apprehension in violation of Articles 80 and 87a of the Uniform Code of Military Justice (UCMJ).[2] The military judge sentenced Appellant to reduction to paygrade E-1, confinement for 30 months, and a bad-conduct discharge (BCD).

Appellant asserts a single assignment of error: that his "sentence was plainly unreasonable considering substantial mitigating evidence and the military judge's recommendation to suspend Appellant's BCD and eight months of the adjudged 30 months of confinement."[3] We disagree and affirm.

## I. BACKGROUND

At the time of the offense, Appellant was an 18-year-old, married Marine assigned to Marine Corps Detachment Goodfellow aboard Goodfellow Air Force Base located in San Angelo, Texas. Appellant was using Tinder, a dating application for adults, and was matched with someone named "Karina."[4] Appellant and "Karina" began communicating through text and other applications.[5]

--------

[2] 10 U.S.C. §§ 880, 887(a).

[3] Appellant's Brief at 2.

[4] Pros. Ex. 1 at 2.

[5] Pros. Ex. 1 at 2.

Soon after they began corresponding, "Karina" informed Appellant she was a 14-year-old, military dependent, who lived on Goodfellow Air Force Base.[6] Unbeknownst to Appellant at the time, "Karina" was a fictitious profile of an undercover law enforcement officer.

Appellant, believing "Karina" to be a 14-year-old military dependent, initiated sexual conversations between them and sought pictures of her "body" so he can see what he is "working with."[7] Appellant made known his intentions with "Karina" stating, "I'm talking about f[***]ing."[8] During the course of texting, "Karina" reminded Appellant that she was 14 years old, to which Appellant responded by asking, "[D]o you consent?"[9] "Karina" answered in the affirmative, and Appellant subsequently messaged, "u wanna get f[***]ed tomorrow or not?"[10] Later, when Appellant asked "Karina" if she could meet up, she advised that she needed to shower. Appellant responded, "u can take a shower after we f[***]."[11]

The two agreed to meet at a location on base where Appellant intended to have sexual intercourse with her.[12] Appellant also agreed to bring condoms.[13] When Appellant arrived at the agreed upon location to meet with "Karina," he was met by law enforcement personnel, who announced themselves as police, and directed Appellant to get down on the ground.[14] Rather than do this, Appellant fled on foot and was pursued by law enforcement. During the pursuit, Appellant ran by his senior enlisted leader who directed him to stop. Appellant complied with the order and was subsequently detained by law enforcement.[15]

Appellant, who was represented by counsel, entered into a plea agreement and pleaded guilty to attempted sexual abuse of a child involving indecent communication, attempted extramarital sexual conduct, and fleeing apprehension. In exchange, the convening authority, in part, agreed to withdraw and dismiss

---

[6] Pros. Ex. 2 at 7.

[7] Pros. Ex. 2 at 8.

[8] Pros. Ex. 2 at 8.

[9] Pros. Ex. 2 at 8.

[10] Pros. Ex. 2 at 8.

[11] Pros. Ex. 1 at 2.

[12] Pros. Ex. 1 at 4.

[13] Pros. Ex. 1 at 4.

[14] Pros. Ex. 1 at 5.

[15] Pros. Ex. 1 at 6.

a specification of attempted sexual assault of a child. The parties also agreed that the minimum sentence would include a punitive discharge, reduction to E-1, and confinement for 30 months.[16] The military judge confirmed Appellant fully understood, and had discussed with his defense counsel, the plea agreement and its terms, to include the limitations on sentencing.[17]

The military judge accepted Appellant's pleas and found him guilty. During his presentencing case, Appellant called a forensic psychologist as an expert witness who testified that Appellant was in the second lowest category of recidivism.[18] The expert further testified that there is "nothing in [his] review of the information . . . that would suggest that [Appellant] has any risk for sexual re-offense . . . . or his ability to be safe in the community."[19]

The military judge sentenced Appellant to reduction to paygrade E-1, confinement for 30 months, and a BCD.[20] Following sentencing, the military judge recommended that the convening authority suspend the BCD and eight months of the adjudged confinement for six months. The military judge's reasoning was as follows:

> The Court considered the young age of the accused -- he was 18 at the time of the offense -- the limited life experience of the accused, the age of the online persona Karina -- she was presented to be 14 years of age -- the fact that . . . Karina was a fictitious online persona, the applicability of the . . . safe harbor provision in DoDI 1325.07 to the facts of this case,[21] the nature of the

---

[16] The maximum sentence authorized based solely on the guilty plea was 17 years of confinement, reduction to the paygrade of E-1, forfeiture of all pay and allowances, a fine, and a dishonorable discharge. Under the plea agreement, the military judge had the discretion to award Appellant with either a dishonorable discharge or a BCD.

[17] R. at 80-87.

[18] R. at 141.

[19] R. at 149-50.

[20] Appellant was sentenced to 30 months of confinement for attempted sexual abuse of a child involving indecent communication; 1 month of confinement for attempted extramarital sexual conduct; and 3 months of confinement for fleeing apprehension. Consistent with the plea agreement, the terms of confinement will be served concurrently.

[21] This provision provides, "an offense involving consensual sexual conduct is not a reportable offense [as a sex offender] if the victim was at least 13 years old and the offender was not more than 4 years older than the victim." Dep't. of Def. Instr. 1325.07, *Administration of Military Correctional Facilities and Clemency and Parole Programs,*

communication, the . . . readily apparent remorse of the accused and sincere acknowledgment of his wrongdoing during his unsworn statement, the fact that the accused is a father, the fact that the plea agreement includes a provision for waiver of an administrative separation board, the testimony of the defense sentencing witness, the absence of significant evidence of aggravation, and the need for the sentence adjudged to be sufficient but not greater than necessary to promote justice and maintain good order and discipline and that it should also consider the need to . . . rehabilitate the accused.[22]

Appellant's clemency request aligned with the military judge's recommendation; however, the convening authority took no action on the sentence.

## II. DISCUSSION

Appellant raises one assignment of error arguing his sentence was plainly unreasonable considering substantial mitigating evidence and the military judge's recommendation to suspend Appellant's BCD and 8 months of the adjudged 30 months of confinement. The Government contends, in opposition, that Appellant's bargained-for sentence was not plainly unreasonable as he received the benefit he negotiated for in his plea agreement, which was at the minimum level of confinement under the sentencing parameters, and that he was awarded the lesser of the two authorized punitive discharges.

Congress amended Article 66, UCMJ, in the National Defense Authorization Act for Fiscal year 2022, adjusting the lens through which courts of criminal Appeals (CCAs) review sentencing.[23] This change in law now permits

---

para. 5.7(d)(5)(a) (Nov. 21, 2024). In this case, the fictitious persona, "Karina," was reported to be nearly 15 years old, while Appellant was almost 19 years old at the time of the offense. The military judge found that the lack of specificity and uncertainty with the fictitious persona's age would not be used against Appellant and held this provision was applicable. Additionally, the military judge informed Appellant that his determination was not final and that certain state laws may still require sex offender registration. *See* R. at 90-121.

[22] R. at 165.

[23] We acknowledge that Article 66, UCMJ "should be approved" review authority for consideration of sentences was removed for violations of the UCMJ offenses on or after 28 December 2023. *See* Nat'l Def. Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, §539E, 135 Stat. 1541, 1700-06 (2021).

CCAs to evaluate sentences for UCMJ offenses occurring on or after 28 December 2023 as to "whether the sentence is plainly unreasonable . . . ."[24]

Neither we nor our superior court have defined the "plainly unreasonable" standard for sentence appropriateness review. Although the Manual for Courts-Martial previously included a definition for "plainly unreasonable," this definition was removed to allow "plainly unreasonable" to be interpreted according to its plain meaning for review under Article 66(e).[25]

While there are some variances in sentencing mandates between military and federal courts, the federal courts, in interpreting what is meant by plainly unreasonable, have clarified that Congress intends there to be a distinction between "unreasonable" and "plainly unreasonable." Specifically, the word "plainly" is not just "surplusage" but was meant to modify "unreasonable," indicating a more stringent standard.[26] Therefore, as the Fourth Circuit held in *United States v. Crudup,* determining whether a sentence is "plainly unreasonable" begins with an analysis of whether the sentence was "unreasonable."[27]

"Unreasonable" is defined as "[n]ot guided by reason; irrational or capricious."[28] In other words, this means accessing whether the sentence adjudged lacks common sense or a rational legal basis. If this Court determines the sentence was not "unreasonable," then further analysis is unnecessary. Only if the sentence is determined to be unreasonable do we then examine whether it was "plainly" so. Consistent with the jurisprudence of our superior court and that of federal courts, we define "plain" to mean "clear or obvious" which is taken from our plain error analysis.[29] We see no reason to deviate from that definition here.

Applying this standard to the current case, we conclude that the sentence negotiated by Appellant was not unreasonable. With the advice and assistance of counsel, Appellant negotiated for a favorable plea agreement that dismissed

---

[24] 10 U.S.C. § 866(e)(1)(D).

[25] R.C.M. 1117(e). "*Standard.* A sentence is plainly unreasonable if no reasonable sentencing authority would adjudge such a sentence in view of the record before the sentencing authority at the time the sentence was announced under R.C.M. 1007." Manual for Courts-Martial, United States (2019 ed.).

[26] *See United States v. Crudup*, 461 F.3d 433, 438 (4th Cir. 2006).

[27] *Id.*

[28] Black's Law Dictionary (11th ed. 2019).

[29] *See United States v. Cole*, 84 M.J. 398, 404 (C.A.A.F. 2024) (citing *United States v. Bodoh*, 78 M.J. 231, 236 (C.A.A.F. 2019); *See also Crudup*, 461 F.3d at 439.

a specification of attempted sexual assault of a child and limited his exposure to a higher sentence. The 30 months of confinement was the minimum under the sentencing parameter for the charges to which he pleaded guilty. Additionally, the military judge adjudged a BCD, which was the lesser of the two punitive discharges permitted under the plea agreement.

When an Appellant is represented by competent counsel and bargains for and receives the benefit of a specific sentence, that is strong evidence that the sentence is not inappropriately severe or plainly unreasonable.[30] This is especially true when the sentence falls within the sentencing parameters.

Appellant relies heavily on the military judge's clemency recommendation to the convening authority as to why his bargained-for sentence was plainly unreasonable. This Court recognizes that a convening authority may, but is not required to, approve a clemency recommendation from the military judge.[31] Here, the convening authority considered and disapproved all clemency matters submitted, which included the clemency recommendation and supporting justification made by the military judge in the Statement of Trial Results. Although the military judge identified several mitigating factors leading to his clemency recommendation to the convening authority, the decision to grant clemency is a matter of command prerogative. Moreover, as this Court has previously held, clemency involves bestowing mercy and is a function of the convening authority rather than the military appellate courts, which do not have clemency power.[32]

Here, Appellant failed to cease contact with "Karina" upon being informed she was a 14-year-old military dependent. Instead, he attempted to sexually abuse a child, and then made arrangements to meet at a specified time and location on a military base intending to have sexual intercourse. Upon being caught, he fled from law enforcement.[33]

---

[30] *United States v. Avellaneda*, 84 M.J. 656, 663 (N-M Ct. Crim. App. 2024) ("Although not dispositive, when an accused who is represented by competent counsel bargains for a specific sentence, that is strong evidence that the sentence is not inappropriately severe and it will likely not be disturbed on appeal.").

[31] Art. 60a(c)(1), UCMJ ("Upon recommendation of the military judge, as included in the Statement of Trial Results, together with an explanation of the facts supporting the recommendation, the convening authority may suspend—(A) a sentence of confinement . . . (B) a . . . bad-conduct discharge . . . ."); *See also* R.C.M. 1109(f); *Avellaneda,* 84 M.J. at 661 ("The military judge's recommendation for suspension of part of a sentence is not binding on the convening authority.") (citation omitted).

[32] *Avellaneda*, 84 M.J. at 661-62.

[33] Pros. Ex. 1 at 5-6.

Though "Karina" was fictitious, Appellant preyed upon a person he believed to be a 14-year-old child of a fellow service member. In light of these circumstances, the adjudged sentence is reasonable and reflects the seriousness of the offenses and promotes adequate deterrence.

## III. CONCLUSION

Accordingly, after careful consideration of the record and briefs of appellate counsel, we do not believe this sentence, as bargained for by Appellant and the convening authority was unreasonable, let alone plainly unreasonable.[34]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[34] Articles 59 & 66, UCMJ.