**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-4625**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROBERT PADGETT, a/k/a Snoop,

Defendant - Appellant.

_____

**No. 14-4627**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROBERT PADGETT, a/k/a Snoop,

Defendant - Appellant.

_____

Appeals from the United States District Court for the Southern District of West Virginia, at Huntington and Charleston. Irene C. Berger, District Judge. (3:98-cr-00048-3; 2:09-cr-00160-1)

_____

Argued: May 13, 2015                    Decided: June 9, 2015

_____

Before MOTZ, SHEDD, and DIAZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Shedd and Judge Diaz joined.

—————————

**ARGUED:** Carl E. Hostler, PRIM LAW FIRM, PLLC, Hurricane, West Virginia, for Appellant. Candace Haley Bunn, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** R. Booth Goodwin II, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

—————————

DIANA GRIBBON MOTZ, Circuit Judge:

The district court revoked Robert L. Padgett's two concurrent terms of supervised release and sentenced him to consecutive terms of imprisonment, followed by new concurrent terms of supervised release. Padgett appeals, and for the reasons that follow, we affirm.

I.

These consolidated cases boast a lengthy procedural history that we summarize briefly. In 1998, Padgett was convicted of conspiracy to distribute and possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846. In 2009, he was again convicted, this time for attempted escape from custody in violation of 18 U.S.C. § 751(a). Padgett's sentence for each conviction included a term of supervised release. In January 2013, the district court revoked Padgett's supervised release in both cases in a consolidated order not at issue in this appeal. The court then sentenced Padgett to two days in prison, followed once again by two concurrent terms of supervised release. In July 2014, the court again revoked his supervised release in both cases. This second revocation -- and the resultant sentences -- provide the basis for this appeal.

In petitioning the court to order this second revocation, the Government alleged four violations of the terms of Padgett's

3

supervised release:  possession of a firearm, two counts of battery, and possession of a switchblade knife.  Following an evidentiary hearing, the district court found that the Government had proven, by a preponderance of the evidence, that Padgett possessed a firearm, committed one count of battery, and possessed a switchblade knife.  Based on these violations, the court revoked Padgett's supervised release in both cases.  The court then sentenced Padgett to consecutive terms of ten months and fourteen months in prison, followed by concurrent terms of twenty-four and twenty months of supervised release.  Padgett noted a timely appeal.

## II.

Padgett maintains that the district court "abused its discretion" when it made one of the findings underlying its decision to revoke his release. Appellant's Br. 2.  We heard argument in this case to clarify our standard of review for such findings.  We review a district court's ultimate decision to revoke a defendant's supervised release for abuse of discretion. United States v. Copley, 978 F.2d 829, 831 (4th Cir. 1992). But, like our sister circuits, we review a district court's factual findings underlying a revocation for clear error. See United States v. Preacely, 702 F.3d 373, 375-76 (7th Cir. 2012); United States v. Oquendo-Rivera, 586 F.3d 63, 67 (1st Cir.

4

2009). Of course, reliance on a clearly erroneous material fact itself constitutes an abuse of discretion. See United States v. Zayyad, 741 F.3d 452, 458 (4th Cir. 2014).

We will not disturb a district court's revocation sentence unless it falls outside the statutory maximum or is otherwise "plainly unreasonable." United States v. Crudup, 461 F.3d 433, 437 (4th Cir. 2006). Only if a revocation sentence is unreasonable must we assess whether it is plainly so. United States v. Moulden, 478 F.3d 652, 656 (4th Cir. 2007). In determining whether a revocation sentence is unreasonable, we strike "a more deferential appellate posture" than we do when reviewing original sentences. Id. (internal quotation marks and citation omitted). Nonetheless, "the [same] procedural and substantive considerations" that guide "our review of original sentences" inform our review of revocation sentences as well. Crudup, 461 F.3d at 438. The sentencing court "must consider" both the policy statements and the applicable policy statement range found in Chapter 7 of the Sentencing Guidelines manual, as well as "the applicable [18 U.S.C.] § 3553(a) factors." Moulden, 478 F.3d at 656; see also United States v. Webb, 738 F.3d 638, 641 (4th Cir. 2013). A sentence within the policy statement range is "presumed reasonable," Webb, 738 F.3d at 642, though "the sentencing court retains broad discretion to . . .

impose a term of imprisonment up to the statutory maximum," <u>Moulden</u>, 478 F.3d at 657.

## III.

Padgett challenges only the district court's finding that he possessed a firearm and its imposition of what he contends is a plainly unreasonable revocation sentence. Both arguments fail.

## A.

At the revocation hearing, the Government offered three witnesses to support the firearm allegation. First, Deputy J.W. Eary testified that, while on patrol, he heard five gun shots fired in rapid succession. He then received a call directing him to Sheer Fantasy, where Padgett worked, to investigate a possible shooting. Witnesses at Sheer Fantasy reported that the shots had been fired by a black male, dressed in black clothing. Shortly thereafter, nearby officers apprehended Padgett, who matched the witnesses' description, and located five shell casings less than a block from Sheer Fantasy. Second, Melanie Curnutte testified that she witnessed an altercation between two men in the Sheer Fantasy parking lot on the night in question. One of the men, whom she recognized as Padgett, fired five shots in the area where the shell casings had been found. Finally, Nicole McEwan, a forensic analyst and qualified gunshot residue

expert, testified that residue samples taken from Padgett's hands and face on the night he was apprehended contained particles consistent with gunshot residue. McEwan offered her expert opinion that Padgett had either discharged a firearm or come into contact with an environment where gunshot residue was present.

Padgett's counsel cross-examined each of the Government's witnesses, eliciting testimony from McEwan that gunshot residue could be transferred by means other than discharging a firearm. The defense then offered a single witness -- Jessica Johnson, Padgett's girlfriend at the time. Johnson testified that she too heard five gunshots that night, but that she was inside her home at the time, with Padgett.

On the basis of all this evidence, the district court found that the Government had proven, by a preponderance of the evidence, that Padgett had possessed a firearm. This standard requires only that "the existence of a fact" be "more probable than its nonexistence." United States v. Manigan, 592 F.3d 621, 631 (4th Cir. 2010) (internal quotation marks and citation omitted). The court did not clearly err in finding Padgett possessed a firearm, and so revocation of his supervised release was not an abuse of discretion.

The district court also imposed a reasonable revocation sentence. Though the court did not cite to Chapter 7 of the Guidelines or to § 3553(a), the factors it relied on closely track the language of both. This "provide[s us] a sufficient explanation so that we may effectively review the reasonableness of the sentence" imposed. Moulden, 478 F.3d at 657.

Such review leaves little doubt here. The consecutive terms of ten and fourteen months' imprisonment (Padgett does not challenge the new terms of supervised release) fall within the policy statement ranges and so are "presumed reasonable." Webb, 738 F.3d at 642. And though the combined term of twenty-four months represents the maximum in-range sentence, the district court had ample reason to eschew leniency here. Padgett had violated the terms of his supervised release once before, squandering the second chance afforded him by committing multiple serious violations of his supervision. A top-of-the-range sentence falls well within the "broad" zone of discretion sentencing courts enjoy in this context. Crudup, 461 F.3d at 440.

Padgett's attempts to suggest otherwise are unconvincing. He characterizes the sentence as "excessive," but only after assuming away the possession-of-a-firearm violation. Appellant's Br. 11. Of course, this is unavailing. We have

held that the district court's finding of that violation was not clear error.

Upon revoking Padgett's supervised release, the district court correctly calculated the policy statement range, considered the appropriate factors under Chapter 7 and § 3553(a), and sentenced Padgett to a term of imprisonment within that range. The result was a reasonable revocation sentence that we decline to overturn on appeal.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.