<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4308**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

TERRY LASHAVIOUS MCMILLIAN,

        Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  Malcolm J. Howard, Senior District Judge.  (7:11-cr-00102-H-1)

Argued:  May 12, 2016          Decided:  June 15, 2016

Before KING and DIAZ, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Jennifer Claire Leisten, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Christopher Michael Anderson, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Stephen C. Gordon, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

While on supervised release in North Carolina, Terry Lashavious McMillian was arrested and charged in state court with various criminal offenses. Although those charges were later dismissed, McMillian's probation officer sought to revoke supervised release on the facts underlying the state charges. The district court agreed, revoked McMillian's supervised release, and sentenced him to twenty-four months in prison. McMillian appeals the court's revocation decision and sentence. As explained below, we affirm.

I.

A.

In December 2011, McMillian pleaded guilty in the Eastern District of North Carolina to a conspiracy offense under 18 U.S.C. § 371. In April 2012, the district court sentenced him to forty-six months in prison and three years of supervised release. As a condition of supervised release, McMillian could not "commit another federal, state, or local crime." See J.A. 14.[1] In January 2014, McMillian was released from prison and began serving his three-year term of supervised release.

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

On March 1, 2015, McMillian was arrested and charged in Columbus County, North Carolina, on four state criminal offenses: "Damage to Real Property"; "Assault by Strangulation"; "Larceny of a Motor Vehicle"; and "Second Degree Kidnapping." See J.A. 18, 37. Three days later, as a result of those charges, McMillian's probation officer moved the district court for revocation of supervised release. The motion alleged that, on February 25 and 26, 2015, McMillian had assaulted Ashea Covington — his girlfriend and the complaining witness — "by holding her down on the ground and strangling her." Id. at 18. He also "forced her into her car and drove around for several hours not allowing her to get out," and then took her car without her permission. Id.

Covington later recanted the allegations she had made against McMillian, and the prosecutor dismissed the state criminal charges. The revocation motion remained pending in the district court, however, and on May 28, 2015, the court conducted an evidentiary hearing on that motion. Three witnesses testified: Tyler Reeves, a sergeant with the Columbus County Sheriff's Office; John Cooper, McMillian's probation officer; and Covington. Reeves recounted the allegations Covington had made against McMillian shortly after the assault, and authenticated and introduced Covington's signed written statement, which detailed those events. Cooper authenticated

4

and introduced the written statement of Pearl Carter — Covington's mother — concerning the assault. In her testimony, Covington again repudiated the allegations she had made against McMillian. McMillian did not testify, but introduced into evidence the dismissals of the state charges.

B.

The evidence at the hearing was that, on February 24, 2015, McMillian showed up uninvited at the residence of Covington and Carter.[2] When Covington and Carter refused entry, McMillian broke their glass storm door.

The following day, McMillian and Covington had an argument, which escalated to physical violence when McMillian attacked Covington. After the assault, McMillian ordered Covington to get in her car, and then drove her around Columbus and Bladen Counties for several hours. When McMillian stopped for gas — which he bought with Covington's debit card — he dared her "to yell for help" and threatened to "beat her dead" if she did. See J.A. 100. McMillian eventually released Covington, but he kept her car, her debit card, and one of her credit cards.

Carter called the Columbus County Sheriff's Office to report that her daughter had been assaulted. Sergeant Reeves,

---

[2] We recite the facts in the light most favorable to the government, as the prevailing party at the revocation hearing. See United States v. Thum, 749 F.3d 1143, 1145 (9th Cir. 2014).

5

who responded to the call, interviewed both Carter and Covington on February 28, 2015. He observed that Covington's "whole [eye] was bloodshot red" from a "busted" blood vessel. See J.A. 34–35. Covington told Reeves that she suffered the eye injury when McMillian strangled her. Reeves also took Covington's written statement, which reads, in pertinent part:

> [O]n Wednesday, February [25], 2015[,] [McMillian and I] exchanged words, after which [McMillian] jumped at me. As I was knocked to the ground, I was choked nearly unconscious. I urinated on myself. He then sat on my chest and slapped me in my face several times resulting in a busted lip, busted blood vessels in right eye, swollen jaw. He also forced my fingers back nearly as far as they would go. Eventually he allowed me up and told me to go wash my face up because my mouth was bleeding. He then took my entire set of keys and told me to go get in my vehicle and that he was driving. He said that if I tried anything crazy that he would beat me dead where I was despite location and company. He rode me around until the wee hours of the morning and took me back to my mother's home. He has refused to give me the keys back to my vehicle to this moment.

Id. at 99.

At about 9:00 a.m. on March 2, 2015, Covington visited the emergency room of the Columbus County Regional Medical Center, complaining of pain around her temples and in the ring fingers of both hands, as well as generalized body pain. She reported to the medical personnel that her injuries were caused by McMillian's assault about a week earlier, when he "strangled and choked" her, kicked her, and "slapped [her] in [the] face multiple times." See J.A. 102, 110. On physical examination, a

6

physician assistant noted subconjunctival hemorrhage — a broken blood vessel in the white of the eyes. An x-ray showed a possible hairline fracture of Covington's left ring finger. A splint was placed on each of Covington's ring fingers, and she was discharged from the hospital.

## C.

After considering the evidence presented and argument from counsel, the district court ruled that McMillian had violated the terms of his release "by his criminal conduct, to include assault and probable theft of a motor vehicle." See J.A. 89. Before sentencing McMillian, the court explained its determination of the applicable Sentencing Guidelines range:

> The court believes that this is a grade A violation and the defendant has a criminal history category of roman numeral V. Under Chapter 7, it would be a 30 to 37-month type of sentence available for the court to consider; however, there's a [statutory] maximum of 24 months.

Id.

Relying on Covington's hearing testimony, in which she repudiated her earlier version of the relevant events, McMillian asked the district court to consider downgrading his supervised release violation from grade A to grade C, based on the lesser offenses of misdemeanor assault and unauthorized use of a motor vehicle. The court declined to do so, however, finding Covington's exculpatory testimony "unreliable in its totality,"

7

and instead crediting her earlier inculpatory statements to Sergeant Reeves and the hospital staff. See J.A. 91. McMillian also sought a lenient sentence on the ground that he had otherwise complied with the conditions of his supervised release. The court rejected that entreaty as well, explaining that, although McMillian "hadn't had any problems while he had a job," he also had "a long history of this type of conduct." Id. at 92.

The district court then revoked McMillian's supervised release and sentenced him to twenty-four months in prison. In rendering its sentence, the court explained that it had "considered the policy statements contained in Chapter 7 of the U.S. Sentencing Guidelines as well as the other factors set out in [18 U.S.C. § 3553(a)]." See J.A. 95. The court recommended that, while incarcerated, McMillian "be exposed to the most intense anger management training and education possible." Id. at 96. Later that day, the court entered its judgment. McMillian has timely appealed, and we possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

II.

On appeal, McMillian presents three contentions of error. First, he argues that the district court erred in finding that he committed the state offense of assault by strangulation.

8

Second, he contends that the court plainly erred in calculating the applicable Sentencing Guidelines range. Finally, he maintains that the court failed to adequately explain the twenty-four month revocation sentence. We address those contentions in turn.

A.

McMillian first contends that the district court erred in finding that he committed the North Carolina offense of assault by strangulation. The government responds that the court's finding was supported by the evidence and thus was not clearly erroneous. To revoke a defendant's supervised release, a district court need only find by a preponderance of the evidence that the defendant violated a condition of release. See United States v. Copley, 978 F.2d 829, 831 (4th Cir. 1992). We review such a factual finding for clear error. See United States v. Padgett, 788 F.3d 370, 373 (4th Cir. 2015).

Assault by strangulation is proscribed by N.C. Gen. Stat. § 14-32.4(b), which provides that "any person who assaults another person and inflicts physical injury by strangulation is guilty of a Class H felony." The elements of assault by strangulation are (1) an assault and (2) the infliction of physical injury by strangulation. See State v. Little, 654 S.E.2d 760, 764 (N.C. Ct. App. 2008).

9

McMillian contends on appeal that the government failed to show by a preponderance of the evidence that Covington suffered any physical injury resulting from strangulation. In support of that contention, McMillian emphasizes the absence of evidence of either redness or bruising around Covington's neck. Addressing Covington's eye injury, McMillian points to Covington's written statement, which attributes that injury to being slapped in the face, rather than being strangled.

The evidence, however, proved that McMillian had choked Covington almost to the point of unconsciousness, causing her to lose control of her bladder. As a result, Covington suffered a subconjunctival hemorrhage — an eye injury that commonly occurs as a result of either strangulation or a direct blow to the eye. See State v. Lanford, 736 S.E.2d 619, 628 (N.C. Ct. App. 2013). Although Covington reported being slapped across the face, there is no evidence to suggest that McMillian struck her directly in her eye. Moreover, Covington complained of neck pain to the medical personnel at the hospital. Accordingly, we are satisfied that the court did not clearly err in finding, by a preponderance of the evidence, that McMillian strangled Covington and thereby caused her to suffer a physical injury. See State v. Lowery, 743 S.E.2d 696, 699 (N.C. Ct. App. 2013) (finding sufficient evidence presented to satisfy physical

injury prong of assault by strangulation where evidence of injuries was consistent with strangulation).[3]

## B.

McMillian next contends — for the first time on appeal — that the district court miscalculated the advisory Guidelines range for his supervised release violation. Specifically, he argues that the court misclassified assault by strangulation as a "crime of violence" under the applicable Guidelines provision, and thus overstated the severity of his violation.

We review a sentence imposed for a supervised release violation "to determine if it is 'plainly unreasonable.'" See United States v. Crudup, 461 F.3d 433, 438 (4th Cir. 2006). In making that determination, "we first consider whether the sentence imposed is procedurally or substantively unreasonable." See United States v. Webb, 738 F.3d 638, 640 (4th Cir. 2013). As relevant here, procedural error in the sentencing context may include improperly calculating the Guidelines range or failing to adequately explain the chosen sentence. See United States v.

---

[3] McMillian also contends that the district court erred in finding that he committed larceny with respect to Covington's car, insisting that the prosecutors failed to prove that he intended to permanently deprive Covington of her vehicle. That contention lacks merit. The evidence showed that McMillian took Covington's car without her consent and was yet in possession of the vehicle when he was arrested almost a week later. On that evidence, the court was entitled to infer that McMillian intended to keep the car and thus had committed larceny.

11

Medina-Campo, 714 F.3d 232, 234 (4th Cir. 2013).  If we conclude that a sentence is unreasonable, we then consider whether it is also "plainly unreasonable, relying on the definition of 'plain' that we use in our 'plain' error analysis," i.e., clear or obvious.  See Crudup, 461 F.3d at 439.

An issue pursued on appeal but not preserved in the lower court is reviewed for plain error only.  See United States v. Olano, 507 U.S. 725, 731-32 (1993).  To satisfy that standard, a defendant must show "(1) that an error was made; (2) that the error was plain; and (3) that the error affected his substantial rights."  See United States v. Carthorne, 726 F.3d 503, 510 (4th Cir. 2013).  We will correct a plain error only when those criteria are satisfied and doing so is necessary to prevent "a miscarriage of justice" or to ensure "the fairness, integrity or public reputation of judicial proceedings."  See United States v. Whitfield, 695 F.3d 288, 303 (4th Cir. 2012) (internal quotation marks omitted).

### 1.

Chapter 7 of the Sentencing Guidelines addresses probation and supervised release violations.  The advisory Guidelines range for a violation of a condition of supervised release is determined by the Revocation Table contained in Guidelines section 7B1.4(a).  The range applicable to a particular defendant depends on three factors, only two of which are

12

relevant to these proceedings: the defendant's criminal history category, as determined at the time the defendant was sentenced to the term of supervision; and the grade of the supervised release violation. See USSG § 7B1.4(a).[4] If the range specified by the Revocation Table is entirely above the statutory maximum sentence or below the statutory minimum sentence, then the statutory maximum or minimum sentence, respectively, "shall be substituted for the applicable range." See id. § 7B1.4(b)(1), (2).

Guidelines section 7B1.1 creates three grades of supervised release violations: A, B, and C. Grade A violations arise from conduct constituting either an offense punishable by more than twenty years in prison; or an offense punishable by more than one year in prison "that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device." See USSG § 7B1.1(a)(1). Grade B violations encompass all conduct constituting any other offense punishable by more than one year in prison. Id. § 7B1.1(a)(2). All other supervised release violations are classified as grade C. Id. § 7B1.1(a)(3).

---

[4] We refer in this opinion to the 2014 edition of the Sentencing Guidelines, the edition applicable to McMillian's sentencing for his supervised release violation.

13

Application Note 2 to Guidelines section 7B1.1 explains that the term "crime of violence" is defined in Guidelines section 4B1.2. That section provides as follows:

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Paragraph (a)(1) of section 4B1.2 is commonly known as the "force clause," and the portion of paragraph (a)(2) that starts with "otherwise" is referred to as the "residual clause." See United States v. Hemingway, 734 F.3d 323, 327 (4th Cir. 2013) (employing that terminology for similar statutory provision). In determining whether an offense is a crime of violence under either clause, we utilize the categorical approach, which focuses solely on the elements of the offense, rather than on the facts of the case. See Carthorne, 726 F.3d at 511.

2.

The district court applied the foregoing legal framework when it sentenced McMillian for his supervised release violation. The court determined that McMillian had committed a grade A violation and indicated that his criminal history

14

category was V.   For such a defendant, the Revocation Table specifies a Guidelines range of 30 to 36 months.[5]   As the court also recognized, however, McMillian was subject to a statutory maximum sentence of twenty-four months, pursuant to 18 U.S.C. § 3583(e)(3).    Accordingly,    under    Guidelines    section 7B1.4(b)(1), the twenty-four month statutory maximum sentence was "substituted for the applicable range."

McMillian contends that the district court misclassified his violation as grade A, and thereby miscalculated the advisory Guidelines range.   Specifically, he maintains that assault by strangulation is not categorically a crime of violence, and that the court thus should have classified his violation as grade B rather   than   grade   A.    Under   that   scenario,   McMillian's Guidelines   range   would   have   been   18   to   24   months.    The government,   for   its   part,   maintains   that   assault   by strangulation qualifies as a crime of violence under the force clause of Guidelines section 4B1.2.

As   McMillian   acknowledges,   he   failed   to   raise   this contention in the district court.   As such, it is subject to plain error review only, and McMillian must therefore show that

---

[5] At the revocation hearing, the district court misstated the range provided by the Revocation Table in Guidelines section 7B1.4 as 30 to 37 months, rather than 30 to 36 months.   That misstatement had no impact on McMillian's sentencing.

15

it is "clear" or "obvious" that assault by strangulation is not a crime of violence.  See Olano, 507 U.S. at 734.

3.

In support of his contention that assault by strangulation is not a crime of violence, McMillian relies on our recent decision in United States v. Vinson, 805 F.3d 120 (4th Cir. 2015).  In Vinson, we recognized that the "assault" element of North Carolina's assault offenses does not require the use or attempted use of physical force, because a defendant can commit an assault under North Carolina law by recklessly or carelessly applying physical force.  Id. at 125-26 (citing State v. Jones, 538 S.E.2d 917, 923 (N.C. 2000)).  Under the law of this circuit, the negligent or reckless application of force does not constitute the "use" of force.  See id. at 125 (citing Garcia v. Gonzales, 455 F.3d 465, 469 (4th Cir. 2006)). Our Vinson decision does not control in this case, however, because the assault element addressed therein is only one element of the offense of assault by strangulation.  As relevant here, Vinson did not consider whether the infliction of physical injury by strangulation — the other element of assault by strangulation — entails the use of physical force.

McMillian contends, as he must, that one can inflict injury by strangulation without using physical force.  In the context of plain error review, we are content to assume that there is

16

some scenario in which a person could commit an assault by strangulation without intentionally applying physical force, and thus that the first prong of Olano has been satisfied. See United States v. Godwin, 272 F.3d 659, 679 (4th Cir. 2001) (assuming that error was committed, so as to satisfy first prong of Olano). It is apparent, however, that McMillian has failed to show that the assumed error is plain, as required by the second prong of Olano. Indeed, he has identified no authority — state or federal — supporting his position that one can inflict physical injury by strangulation without using physical force. Cf. United States v. King, 628 F.3d 693, 700 (4th Cir. 2011) (rejecting claim of plain error where defendant identified no "binding precedent supporting" his position). Nor has he offered any plausible counterexample to the proposition that assault by strangulation requires the use of physical force.[6] We

---

[6] At oral argument, McMillian offered two examples to support his contention that assault by strangulation can be committed without the use of physical force. His first hypothetical involves erotic asphyxiation, a practice in which the supply of oxygen to the brain is restricted to increase sexual gratification. McMillian's second hypothetical posits a police officer who uses a chokehold to subdue a suspect, but recklessly employs excessive force in doing so. McMillian's hypotheticals both fail, however, because they involve the intentional application — i.e., the use — of physical force.

are therefore satisfied that McMillian has failed plain error review.[7]

C.

In his final contention of error, McMillian faults the district court for failing to adequately explain the sentence it imposed. In particular, McMillian insists that the court did not "address [his] nonfrivolous arguments for a lower sentence." See Br. of Appellant 26.[8]

A district court sentencing a defendant for a supervised release violation must "adequately explain [its] chosen sentence." See United States v. Thompson, 595 F.3d 544, 547 (4th Cir. 2010) (internal quotation marks omitted). The failure to do so constitutes procedural error. See id. The court's

---

[7] McMillian also contends that the offense of assault by strangulation is not punishable by more than a year in prison. That contention is without merit. Since the North Carolina legislature enacted the Justice Reinvestment Act in 2011, all North Carolina felony offenses — including assault by strangulation — are subject to a maximum term of imprisonment of at least thirteen months, "regardless of offense class or prior record level." See United States v. Barlow, 811 F.3d 133, 137 (4th Cir. 2015).

[8] We are satisfied that McMillian preserved his contention that the district court failed to adequately address his arguments for a lower sentence. See United States v. Lynn, 592 F.3d 572, 578 (4th Cir. 2010) ("By drawing arguments from § 3553 for a sentence different than the one ultimately imposed, an aggrieved party sufficiently alerts the district court of its responsibility to render an individualized explanation addressing those arguments, and thus preserves its claim.").

18

explanation, however, "need not be as detailed or specific when imposing a revocation sentence as it must be when imposing a post-conviction sentence." Id. (internal quotation marks omitted). Moreover, as we recognized in United States v. Montes-Pineda, "in determining whether there has been an adequate explanation, we do not evaluate a court's sentencing statements in a vacuum." See 445 F.3d 375, 381 (4th Cir. 2006). Rather, "[t]he context surrounding a district court's explanation may imbue it with enough content for us to evaluate both whether the court considered the § 3553(a) factors and whether it did so properly." Id.

Before it imposed the challenged sentence, the district court expressly acknowledged McMillian's contention that, apart from the incidents underlying the revocation motion, he had complied with the conditions of his release. See J.A. 92 ("That's correct, it was a year and a half into his supervision and Officer Cooper said he hadn't had any problems while he had a job, etc."). The court then emphasized, however, that McMillian had "a long history of this type of conduct . . . in his past." Id. Thus, the record demonstrates that the court considered and rejected McMillian's arguments for a lower sentence, deeming his history of violent conduct to be of greater significance. Moreover, other aspects of the record confirm that McMillian's history of violence was a primary

19

concern of the court throughout the hearing.  See id. at 87 (reciting McMillian's criminal history, including numerous assault convictions); id. at 96 (recommending that McMillian "be exposed to the most intense anger management training and education possible" while in prison).  Accordingly, we also reject McMillian's contention that the court inadequately explained its chosen sentence.

III.

Pursuant to the foregoing, we reject McMillian's contentions of error and affirm the judgment.

AFFIRMED

20