**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 16-4032**
_____

UNITED STATES OF AMERICA,

              Plaintiff – Appellee,

      v.

MARK A. PATILLO,

              Defendant – Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.   Robert E. Payne, Senior District Judge.   (3:08-cr-00129-REP-1)

_____

Submitted:  May 27, 2016          Decided:  September 15, 2016

_____

Before GREGORY, Chief Judge, and KEENAN and DIAZ, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion, in which Chief Judge Gregory and Judge Keenen joined.

_____

Geremy C. Kamens, Federal Public Defender, Alexandria, Virginia, Robert J. Wagner, Assistant Federal Public Defender, Paul E. Shelton, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Dana J. Boente, United States Attorney, Alexandria, Virginia, S. David Schiller, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Mark Patillo appeals the district court's judgment revoking his supervised release and sentencing him to twenty-four months in prison, followed by a period of four years of supervised release. Patillo contends there was insufficient evidence to find that he violated the terms of his supervised release by committing the offense of felony eluding in violation of Virginia Code Section 46.2-817(B). For the reasons that follow, we affirm.

I.

A.

A federal grand jury returned a four-count indictment charging Patillo with possession with intent to distribute heroin, in violation of 21 U.S.C. § 841; possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841; possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a felon and user of controlled substances, in violation of 18 U.S.C. § 922(g)(1), (3). Patillo pled guilty to possession with intent to distribute heroin and possession of a firearm in furtherance of a drug trafficking crime. The district court sentenced Patillo to forty-one months' incarceration on Count One and a consecutive sixty months'

2

incarceration on Count Three, to be followed by a five-year term of supervised release. On August 14, 2015, Patillo began his ordered period of supervised release. The supervised release term was conditioned on Patillo's not committing another federal, state, or local crime, or using a controlled substance.

On November 18, 2015, at approximately 10:00 p.m., Detective John Flores was driving an unmarked Chevy Impala southbound on Ford Avenue in Richmond, Virginia. After Flores crossed the intersection of Ford Avenue and Spotsylvania Street, a Ford Explorer attempted to pass his vehicle on the right while traveling in a designated parking lane. The driver of the Explorer, later identified as Patillo, braked to avoid hitting a parked car and abruptly stopped his vehicle fifteen feet in front of Flores's police cruiser.

Both vehicles came to a stop on Ford Avenue, just south of the intersection where Spotsylvania meets Ford Avenue from the west forming a dead end or T-intersection. Approximately five seconds later, Patillo shifted his vehicle into reverse and sped down Ford Avenue. When Patillo reached the intersection, he turned onto Spotsylvania, still in reverse, and continued backing down the street for forty to fifty yards.

Detective Flores activated his police cruiser's lights and siren. Without losing sight of Patillo, Flores pursued him by similarly reversing his police cruiser down Ford Avenue, but

3

instead of turning onto Spotsylvania as Patillo had done, Flores drove slightly past the intersection.

By the time Flores turned right onto Spotsylvania, Patillo was headed toward Ford Avenue at approximately thirty miles per hour. Patillo drove through the intersection, disregarding a stop sign, and collided with an SUV parked in a driveway across Ford Avenue. Flores believed that he was in danger of being struck by Patillo's vehicle as it traveled through the intersection and noted that the distance between the two vehicles was approximately five feet. Patillo exited the damaged Explorer and fled on foot. Flores eventually caught up to Patillo in the backyard of a nearby residence and took him into custody.

B.

Patillo's probation officer filed a revocation petition, alleging that Patillo violated the conditions of his supervised release by using cocaine and committing the crimes of reckless driving, failing to stop at the scene of an accident, and felony eluding. Before the district court, Patillo admitted guilt as to the first, second, and third violations, but he challenged the charge of felony eluding. After hearing from witnesses, the district court (1) determined that Patillo had committed all of the violations, (2) revoked Patillo's supervised release, and

(3) sentenced him to twenty-four months' incarceration followed by four years of supervised release.

## II.

Patillo appeals the district court's judgment revoking his supervised release for committing the offense of felony eluding in violation of Virginia Code Section 46.2-817(B). He argues the district court abused its discretion in evaluating the credibility of contrasting witness testimony and contends there was insufficient evidence to prove an essential element of the offense.

We review the district court's decision to revoke supervised release for abuse of discretion. United States v. Padgett, 788 F.3d 370, 373 (4th Cir. 2015), cert. denied, 136 S. Ct. 494 (2015). To revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of supervised release. 18 U.S.C. § 3583(e)(3). We review for clear error the district court's findings of fact underlying the conclusion that a violation occurred. Padgett, 788 F.3d at 373. There is clear error if the court, after reviewing the record, is left with "the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. U.S. Gypsum Co., 333 U.S.

5

364, 395 (1948)). However, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." United States v. Wooden, 693 F.3d 440, 451 (4th Cir. 2012) (quoting Anderson, 470 U.S. at 573-74).

A.

We first consider Patillo's contention that the district court erred in crediting the testimony of Detective Flores regarding the distance Patillo drove in reverse on Spotsylvania. The crux of Patillo's argument is that if Flores was stopped on Ford Avenue for approximately five seconds as Patillo began driving down the street in reverse, he would have lost sight of Patillo when he turned onto Spotsylvania and moved behind a house located on the corner of the intersection.

According to Patillo, the district court should have credited the testimony of his cousin Donyell Patillo, who was standing on Ford Avenue in a driveway across the street from where Flores's police cruiser stopped. Donyell testified that Patillo drove in reverse only a few feet down Spotsylvania, just far enough to stop at the stop sign and align his vehicle with a driveway located directly across the intersection. Additionally, Donyell stated that once Patillo's vehicle

6

stopped, Flores made a U-turn on Ford Avenue, turned left through the intersection, and made a second U-turn on Spotsylvania to reposition himself behind Patillo, who by then had crossed the intersection and entered the driveway. Thus, according to Donyell, Patillo never ran through the stop sign or came close to colliding with Flores's police cruiser.

The government responds that credibility determinations made during a supervised release revocation proceeding are not reviewable, a contention that finds support in the case law. In the context of revocation proceedings, our sister courts have consistently held that witness credibility is quintessentially a judgment for the trier of fact and thus virtually unreviewable on appeal. United States v. Cates, 613 F.3d 856, 858 (8th Cir. 2010) (holding witness credibility is virtually unassailable on appeal); United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994) (per curiam) (finding credibility of a witness is in the province of the district court and the appellate court will not ordinarily review the factfinder's determination); United States v. Whalen, 82 F.3d 528, 532 (1st Cir. 1996) (stating "credibility determinations are within the unique role of the factfinder and we are loath to upset . . . the district court's findings" (citation omitted)); see also United States v. Lindsey, 242 F. App'x 65, 66 (4th Cir. 2007) (per curiam) (holding that a district court's "evaluation of the credibility

7

of contrasting witness testimony . . . may not be disturbed" on appeal).

Here, however, we need not settle on the appropriate standard of review because, even reviewing for clear error, we would not overturn the district court's findings. On this record, there was sufficient evidence for the court to find that after stopping on Ford Avenue for approximately five seconds, Flores quickly backed down the street without losing sight of Patillo's vehicle as it turned onto Spotsylvania and traveled in reverse for forty to fifty yards. Patillo's challenge amounts to an invitation (which we decline) for this court to reweigh the evidence and substitute its own credibility determinations for those made by the district court.

## B.

We next consider whether the district court correctly found that Patillo committed the offense of felony eluding in violation of Virginia Code Section 46.2-817(B). Patillo argues that the district court erred because his conduct did not interfere with or endanger the operation of Flores's vehicle or endanger a person, including himself. We do not agree.

Under Virginia law, a person is guilty of felony eluding if, "having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, [he] drives such motor vehicle in a willful and wanton disregard of

such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person." Virginia Code § 46.2-817(B). Explaining the "endangerment" element, Virginia courts have reasoned that "a manifest purpose of the statute is to protect the public against a driver eluding police 'so as to . . . endanger a person.'" Tucker v. Commonwealth, 564 S.E.2d 144, 146 (Va. Ct. App. 2002) (quoting Virginia Code § 46.2-817(B)). Thus, "conduct that raises the specter of endangerment is the evil contemplated and proscribed by the statute." Gray v. Commonwealth, 651 S.E.2d 400, 403 (Va. Ct. App. 2007) (quoting Tucker, 564 S.E.2d at 146).

The statute does not require an individual to be at the scene and narrowly escape injury or death; it requires only that the defendant's conduct create the "specter of endangerment." Coleman v. Commonwealth, 660 S.E.2d 687, 690 (Va. Ct. App. 2008) (quoting Tucker, 564 S.E.2d at 146) (finding that traveling at a high rate of speed through an unoccupied cul-de-sac and hitting a curb constituted endangerment). The person endangered can be the driver himself, the pursuing police officer, or anyone else traveling on the road who is placed at risk as a result of the defendant's actions. Phelps v. Commonwealth, 654 S.E.2d 926, 927 (Va. 2008).

Here, Patillo interfered with and endangered the operation of Detective Flores's vehicle. Patillo entered the intersection

9

at approximately thirty miles per hour, disregarded a stop sign located on the corner, and traveled within five feet of Detective Flores's police cruiser. When Flores saw Patillo's vehicle coming toward him, he stopped on Spotsylvania, fearing that he would be rammed. Although Patillo contends that Flores was not forced to "swerve, brake, or take any action to avoid a collision," Appellant's Br. at 17, and therefore was not endangered, the district court was unconvinced, stating, "[A]nybody who thinks he's going to be rammed is going to remain where he is to protect himself." J.A. 87-88.

We hold that the district court did not abuse its discretion in concluding that Patillo committed the offense of felony eluding, in that Patillo's conduct endangered and interfered with the operation of Flores's vehicle. We also agree with the district court that Patillo's conduct posed a significant risk to the safety of others, including himself. By driving through an intersection at thirty miles per hour, without stopping at the stop sign, Patillo endangered anyone traveling on the road that night, including other drivers, pedestrians, and cyclists. The district court aptly described the "specter of endangerment": "[Patillo] flew across the intersection without stopping thereby endangering anybody who was coming down the street, any car who was coming down the

10

street and himself." J.A. 88. And that Patillo struck a parked SUV serves as further proof that he endangered himself. Id.

Although Patillo accurately contends that Virginia courts have yet to find that running a stop sign, without more, constitutes felony eluding, that is not what happened here. Instead, Patillo reversed down Ford Avenue at a high rate of speed, made a reverse turn onto Spotsylvania, and traveled in reverse for forty to fifty yards before driving back through the intersection at thirty miles per hour.

Moreover, Patillo does not cite to a single case showing that his conduct is insufficient to support a finding of endangerment. Without such precedent he cannot show that the district court abused its discretion.

## III.

We affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

11