**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4010

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

EZEKIEL DENNISON, a/k/a OG,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Florence. Terry L. Wooten, Senior District Judge. (4:05-cr-00889-TLW-1)

Argued: March 21, 2019                     Decided: May 29, 2019

Before GREGORY, Chief Judge, NIEMEYER, and MOTZ, Circuit Judges.

Affirmed by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Niemeyer and Judge Motz joined.

**ARGUED:** Mario A. Pacella, STROM LAW FIRM, LLC, Columbia, South Carolina, for Appellant. Lauren L. Hummel, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee. **ON BRIEF:** Sherri A. Lydon, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

GREGORY, Chief Judge:

Appellant Ezekiel Dennison appeals the district court's order revoking his term of supervised release and sentencing him to 36 months' imprisonment. Reviewing for plain error, we conclude that there was error and it was plain. Because the error did not affect Dennison's substantial rights, however, we affirm the judgment of the district court.

I.

On January 30, 2006, Dennison pleaded guilty to conspiracy to possess with the intent to distribute narcotics in violation of 21 U.S.C. § 841. He was initially sentenced to 192 months' imprisonment, followed by a 10-year term of supervised release. After a Rule 35(b) motion, however, Dennison's sentence was reduced in February 2013 to 150 months' imprisonment, and the sentence was reduced again in May 2015, this time to 140 months, after a Sentencing Guidelines amendment. Dennison began serving his supervised release term on December 4, 2015.

On January 31, 2017, Dennison's probation officer petitioned the court to revoke his supervised release on the basis that Dennison illegally used cocaine and associated with a convicted felon. The court found him guilty of both Grade C violations and modified the conditions of his supervised release to include 120 days of home confinement with electronic monitoring. On October 27, 2017, the probation officer filed another petition to revoke Dennison's supervised release, alleging the following violations: (1) new criminal conduct—possession with intent to distribute crack cocaine (Grade A violation); (2) new criminal conduct—simple possession of marijuana (Grade C

2

violation); (3) illegal drug use—cocaine (Grade C violation); (4) association with a convicted felon without permission (Grade C violation); (5) failure to submit to drug testing as instructed (Grade C violation); and (6) failure to comply with home confinement (Grade C violation). At issue here is only the Grade A violation for possession with intent to distribute crack cocaine.

On December 19, 2017, the district court held an evidentiary hearing on the allegations that Dennison violated the terms of his supervised release. The evidence showed the following.

On August 31, 2017, Officer Chad O'Riley of the Myrtle Beach Police Department ("MBPD") and other members of the MBPD street crimes unit were surveilling a Food Lion in response to several anonymous complaints about drug deals taking place in the parking lot. During this surveillance, Officer O'Riley testified, he watched a blue minivan pull into the parking lot and saw several people who had been waiting by their cars run over to the van and engage in "a hand-to-hand exchange of money for something else which was consistent with narcotics sales." The van eventually left the parking lot, and the officers conducted a traffic stop a short time later after observing the vehicle commit a traffic infraction. Officer O'Riley testified that the officers arrested the three individuals in the vehicle for unrelated offenses and that one of the individuals "had a large quantity of narcotics, specifically, crack and heroin on his person."

After transporting the individuals to Myrtle Beach Jail, the officers conducted post-*Miranda* interviews with two of them. According to Officer O'Riley, these

3

individuals explained that "Zeek" "would purchase vehicles and register them in other people's names for the primary use to transport narcotics and distribute narcotics." Officer O'Riley testified that he showed the individuals "a DMV photo of Mr. Ezekiel Dennison, at which time they positively identified him as Zeek who they knew." Officer O'Riley said he also spoke with several other subjects during his investigation and that these individuals gave him information about Dennison and his work as "a drug supplier in the Myrtle Beach area."

On October 16, 2017, the officers conducted a trash pull at Dennison's residence. In the trash can marked for "Unit 1," Dennison's unit, Officer O'Riley found 11 or 12 plastic sandwich bags with the corners ripped off—a common practice, he said, "for drug dealers who are packaging specifically crack cocaine." Officer O'Riley further explained that he observed in one of the bags a white powder substance that field-tested positive for cocaine. He also found, in the same bag, a handwritten receipt signed by "Ezekiel Benson" and a crack pipe. A day after this trash pull, Officer O'Riley obtained a search warrant for Dennison's residence.

On October 18, 2017, the day after obtaining the warrant, MBPD officers and SWAT team members executed it. Austin Cox, an MBPD officer who was assisting with the operation, testified that the SWAT team rammed in the door of Dennison's residence after conducting a knock-and-announce. According to Officer Cox, SWAT team members found Dennison in the bathroom with his hands up, and they also heard a toilet flush and water running in the bathroom. Officer Cox said that another person was

4

discovered in the dining room. Both Dennison and this person were detained and escorted outside the home.

During the search of the residence, Officer O'Riley discovered contraband in the bedroom that was adjacent to the bathroom in which Dennison was found. Specifically, Officer O'Riley testified that he saw a candle sitting on a shelf above a nightstand and that in this candle he spotted in plain view six plastic bags of suspected controlled substances—four of marijuana and two of cocaine. Officer O'Riley explained that the packaging for the suspected "cocaine or cocaine base" was similar to the packaging he found in the trash pull. In his search of the bedroom, Officer O'Riley also discovered mail belonging to Dennison, sandwich bags, rubber bands, cell phones, digital scales, and about $7,500 in cash.[1]

Officer O'Riley field-tested both of the substances he found in the bedroom. The suspected marijuana tested positive for THC, and the "white rock-like substance" testified positive for "cocaine or cocaine base." As relevant here, Officer O'Riley placed the two cocaine substances in a SLED B.E.S.T. pack and sent them for testing.

Courtney Johnson, a forensic chemist with the Horry County Police Department who was admitted as an expert in forensic chemistry and drug analysis, testified about the substances she received from Officer O'Riley. Johnson reported without objection that the two substances tested positive for cocaine, weighing 0.9 grams and 0.3 grams. She

---

[1] According to Officer O'Riley, one of the cell phones had about 200 missed calls within a four- or five-hour period—evidence, in his experience, that Dennison was using a dispatch number to facilitate drug dealing.

confirmed on cross-examination that both substances were powder cocaine, not cocaine base or crack. Officer O'Riley, for his part, similarly recognized that the two bags he confiscated contained powder cocaine. At the same time, he acknowledged that the warrant in this case "was for possession with intent to distribute cocaine base or . . . crack cocaine," rather than powder cocaine.

At the close of the evidence, the district court found Dennison guilty of each of the violations by a preponderance of the evidence. The court devoted most of its discussion to Violations 1 and 2—possession with intent to distribute crack cocaine and simple possession of marijuana, respectively. In finding that the government established these violations, the court noted that a utility bill connected Dennison to the searched apartment and that he was found near the bedroom in which law enforcement discovered drugs packaged for sale, baggies, rubber bands, cell phones, scales, and a large amount of cash—all evidence that Dennison intended to distribute the drugs. The court also considered the contents of the trash pull, including the sandwich bags with cut corners, the white powder substance in one of the bags, and the crack pipe. Based on this evidence, the court held that the government met its burden and proved by a preponderance of the evidence that Dennison "possessed drugs with the intent to distribute those drugs, specifically, cocaine, and [he], in fact, possessed marijuana." The court did not discuss the crack/cocaine issue that surfaced during the hearing— specifically, it did not address the fact that the petition for revocation alleged that Dennison possessed crack cocaine with the intent to distribute it but the evidence at the hearing established that the substance involved was powder cocaine.

After noting that Dennison committed a Grade A violation—possession with intent to distribute a controlled substance—the court explained that his policy statement range was 37 to 46 months given his criminal history category of IV. The court then revoked Dennison's supervised release and sentenced him to 36 months' imprisonment, with no supervision to follow. The criminal judgment that was issued reflected that Dennison had been found guilty of possession with intent to distribute "crack cocaine."

Dennison's counsel initially filed an *Anders* brief, arguing that the appeal presented no meritorious issues but questioning the sufficiency of the evidence supporting the "crack cocaine" violation. *See Anders v. California*, 386 U.S. 738 (1967).[2] Specifically, counsel argued that the evidence was insufficient to show possession, intent to distribute (given the small drug quantity), or that the drug involved was crack cocaine.

After reviewing the *Anders* brief and the record in this case, we concluded that the appeal presented a nonfrivolous issue stemming from the fact that Dennison was found guilty of a violation involving a specific drug (crack cocaine) that was not the drug actually involved in the violation (powder cocaine). We therefore directed counsel for

---

[2] Under *Anders*, "if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." 386 U.S. at 744. "That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Id.* It then becomes the court's responsibility to determine, "after a full examination of all the proceedings," whether the case is wholly frivolous. *Id.* If the court so concludes, it may grant the request to withdraw. *Id.* But if the court determines that nonfrivolous arguments exist, it must afford the defendant assistance of counsel to argue the appeal. *Id.*

Dennison and the government to submit merits briefs on whether there was sufficient evidence to show that the drug involved in Violation 1 of the criminal judgment was crack cocaine. We also invited Dennison's counsel to brief any other nonfrivolous issues supported by the record. The arguments presented in this briefing are now before us.

## II.

Dennison contends that the district court erred because the evidence was insufficient to support a finding of guilt for possession with intent to distribute crack cocaine. He argues primarily that the evidence does not establish that the drug involved was crack cocaine rather than powder cocaine and that the district court failed to make the findings required to sustain a supervised release violation based on crack cocaine.

This Court generally reviews a district court's decision to revoke a defendant's supervised release for abuse of discretion, and we review the factual findings underlying a revocation for clear error. *See United States v. Padgett*, 788 F.3d 370, 373 (4th Cir. 2015). But because Dennison did not object to the revocation of his supervised release on the basis identified in this Court's supplemental briefing order, we review only for plain error. *See United States v. Olano*, 507 U.S. 725, 732–34 (1993). Under this standard, Dennison must show (1) an error, (2) that is plain, and (3) that affected his substantial rights, which typically means that the error "must have affected the outcome of the district court proceedings." *Id.* at 734. We will correct the error, moreover, only "where not doing so would result in a miscarriage of justice, or would otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States*

8

*v. Whitfield*, 695 F.3d 288, 303 (4th Cir. 2012) (quoting *United States v. Robinson*, 627 F.3d 941, 954 (4th Cir. 2010)).

We have little reluctance in concluding that there was error and it was plain. The record contains no evidence that the drug involved in the violation was crack cocaine. The forensic chemist testified that the substances recovered were powder cocaine rather than crack cocaine, and Officer O'Riley likewise confirmed in his testimony that the substances turned out to be powder cocaine. Based on this testimony and other evidence, the district court concluded that Dennison possessed "cocaine" with the intent to distribute it, but the court did not address the fact that the petition for revocation described the violation as involving "crack cocaine." *See* J.A. 16 (petition listing "Violation Number 1" as "possession with intent to distribute crack cocaine"). In revoking Dennison's supervised release, moreover, the district court entered a criminal judgment showing a violation involving crack cocaine despite the lack of evidence of crack cocaine presented at the revocation hearing. It was thus error for the court to enter an order revoking Dennison's supervised release on the basis that he possessed crack cocaine with the intent to distribute it.

Despite this plain error, however, Dennison cannot show that the error affected his substantial rights and changed the outcome of the proceedings. *See Olano*, 507 U.S. at 732–34. As an initial matter, ample evidence supports the district court's conclusion at the hearing that Dennison possessed cocaine with the intent to distribute it. *See* 18 U.S.C. § 3583(e)(3) (district court need only find a violation of a condition of supervised release by a preponderance of the evidence); *United States v. Copley*, 978 F.2d 829, 831

9

(4th Cir. 1992) (same). As the district court recognized, the amount of cocaine discovered was indeed small at only 1.2 grams, but the evidence otherwise strongly indicated that Dennison possessed drugs with the intent to distribute them—he was found in his own residence near a bedroom where officers discovered in plain view drugs packaged for sale, sandwich bags, rubber bands, several cell phones, scales, and a large sum of cash. The trash pull from Dennison's residence yielded additional evidence, including sandwich bags with cut corners, one of which contained a white powder substance that tested positive for cocaine. This record supports the conclusion that Dennison violated a condition of supervised release by possessing cocaine with the intent to distribute it.[3]

Dennison's violation for possessing and intending to distribute cocaine—like such a violation for crack cocaine—constitutes a Grade A violation of supervised release requiring the district court to revoke his supervised release term. *See* U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke . . . supervised release."); *id.* § 7B1.1(a)(1) (explaining in part that Grade A violations include conduct constituting a federal, state, or local controlled-substance offense punishable by an imprisonment term exceeding one year); S.C. Code §§ 44-53-370(a)(1), (b)(1), § 44-53-375(B) (providing that cocaine and cocaine base are controlled substances and that possessing either with the intent to distribute constitutes a felony). No matter

---

[3] Dennison suggests that the evidence was insufficient to show such a violation in part because his sister was willing to sign an affidavit saying the drugs were hers. No such affidavit came before the district court, however, and in any event the evidence overwhelmingly tied Dennison to the drugs.

10

whether the substance was cocaine or crack cocaine, then, the outcome would have been the same—Dennison committed a Grade A violation of his court-ordered supervised release term by possessing a controlled substance with the intent to distribute it. *See United States v. Crudup*, 461 F.3d 433, 438 (4th Cir. 2006) (explaining that the Sentencing Commission, in debating how to sanction violations of supervised release, chose "to focus punishment on violations of a court order rather than on the particular conduct giving rise to the revocation"); *see also* U.S.S.G., Ch. 7, Pt. A, Introductory Cmt. 3(b) (adopting an approach toward sanctioning supervised release violations under which a violation constituted a "breach of trust"). That Grade A violation required the district court to revoke Dennison's supervised release, and it appropriately did so.

Central to our conclusion is the fact that the district court's error caused Dennison no prejudice in preparing his defense. The revocation petition that provided notice of the alleged supervised release violations, though formally misidentifying Violation 1 as possession with intent to distribute "crack cocaine," specifically indicated in the conduct description that the violation was based on the discovery in Dennison's home on October 18, 2017, of "two bags which contained a white rock powdery substance" that "field[-]tested positive for the presence of cocaine." Dennison was thus on notice from the start of the proceedings that the government would seek to establish at the revocation hearing that he possessed and intended to distribute the cocaine found in his home on October 18. This notice was crucial to ensuring that Dennison received the process he was due as part of the revocation proceedings. *See Morrissey v. Brewer*, 408 U.S. 471,

11

489 (1972) (due process requires written notice of claimed supervised release violations among other procedural safeguards).

On this record, Dennison cannot show that the error affected his substantial rights. We accordingly affirm the judgment of the district court.[4]

III.

For the foregoing reasons, we affirm the district court's order revoking Dennison's supervised release.

*AFFIRMED*

---

[4] We note, however, that the district court retains authority under Federal Rule of Criminal Procedure 36 to correct at any time the oversight in its judgment—i.e., the erroneous reference to "crack cocaine" rather than "cocaine" or "powder cocaine." *See* Fed. R. Crim. P. 36 ("After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission.").